JOSEPH SWIERCZ, Appellee, *vs.* THE ILLINOIS STEEL COMPANY, Appellant.

*Opinion filed December 17, 1907.*

1. TRIAL—*evidence cannot be weighed on motion to direct verdict.* Upon motion to direct a verdict in favor of the defendant in a personal injury case the court cannot weigh the evidence, but is required to take the view most favorable to the plaintiff.

2. MASTER AND SERVANT—*mere giving of order to servant to do work proving to be dangerous does not raise liability.* The mere fact that the master orders the servant to do certain work the performance of which proves to be dangerous and results in an injury to the servant does not render the master liable, unless he knew or should have known of the danger, and was, in consequence, guilty of negligence in giving the order.

3. INSTRUCTIONS—*when omission from one instruction is not cured by others.* In a personal injury case, if an instruction, amounting to a direction to the jury to find for the plaintiff if they believe the facts stated therein have been proved, omits the essential element of the defendant's negligence, the error is not cured by instructions for the defendant making proof of such negligence essential to a recovery.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. L. C. RUTH, Judge, presiding.

Joseph Swiercz sued the Illinois Steel Company in an action on the case, in the circuit court of Cook county, to recover damages for personal injury. The declaration alleged that the defendant was the owner of a rolling mill in the city of Chicago and employed the plaintiff as a common laborer, and it was his duty to do everything which the defendant directed him to do. Among other things, he was ordered by the defendant to unfasten a certain cover or lid of a mold which contained iron or steel that had been molten and was in liquid form, the cover being secured to the mold by iron bands; that at the time the plaintiff was ordered to unfasten the cover the defendant knew, or by the exercise of reasonable care could have known, that its contents were in a heated and explosive condition and were not sufficiently cooled to be safely uncovered, and knew of the danger of uncovering the mold in that condition; that the plaintiff did not know of said danger and it was the duty of the defendant to warn him, but the defendant, not regarding its duty in this behalf, negligently, carelessly and willfully failed to warn the plaintiff and negligently and willfully ordered him to unfasten said cover, and while unfastening the same in obedience to said order, and while in the exercise of due care and diligence for his own safety, the molten contents of said receptacle exploded, striking the body of the plaintiff and severely burning and injuring him. A trial resulted in a

verdict and judgment against defendant for $2800, which has been affirmed by the Appellate Court, and a further appeal is prosecuted to this court.

Knapp, Haynie & Campbell, G. R. Call, and William Beye, for appellant.

N. L. Piotrowski, and Cyrus J. Wood, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

Appellant insists that the court should have sustained its motion to instruct the jury to find it not guilty.

The plaintiff had been in defendant's employ for many years, and for four years had worked as a slagman at the place where these molds were filled. The molds were about six feet high and each held about four tons. They rested on small cars which ran upon a track past the apparatus where they were filled with the molten metal. After a mold was filled it was covered with a plate placed on top of it and held down firmly by a bar across the top of the mold, held by lugs on either side of the mold and tightened by a wedge between the bar and the plate. Another mold was then filled and capped in same way, and then a third. The three were then permitted to remain undisturbed for a time to partially cool. If opened too soon there was danger of an explosion of the molten metal. When sufficiently cooled the caps of the molds were taken off and the molds removed. The work of capping and uncapping the molds was done by men stationed on a platform alongside the track on which ran the cars carrying the molds. It was also a part of their duty to chip off from the mold any of the metal which ran over and adhered to the sides. Metal which remained in the ladle after a mold was filled was poured out beside the track. It was called "slag," as was also the metal scraped off the molds, and laborers called "slagmen" were employed

to place this slag on cars to be taken away.  During the time the plaintiff had been a slagman he had been sometimes called up to the platform when some of the men were absent to do the work of the capper,—that is, to chip the slag off the molds and to cap and uncap the molds.  He had done this many times.  On the day of his injury the plaintiff was thus working on the platform all day.  About five o'clock in the evening three molds had been filled, capped and left to cool.  Thomas Moore was the superintendent, and the plaintiff testified that Moore told him to take the hammer and uncover the molds, and do it quick.  Plaintiff also testified that he did not know how long the molds were filled before he got hurt,—that when they were being filled he was chipping other molds.  He obeyed the order, and in uncovering the third mold was injured by the explosion of the metal.

This evidence tended to show that the mold required time to cool; that the plaintiff did not know how long it had been cooling; that his superior gave him an order to uncover the mold and do it quickly; that while he was obeying this order, the metal, because it had not had sufficient time to cool, exploded and injured the plaintiff.  Mr. Moore testified that he timed the heat; that he saw the clock the time the last heat was poured; that he went away and came back in ten or twelve minutes; that the steel had been in the molds long enough; that he asked the plaintiff if everything was all right but gave him no order.  While the evidence was thus contradictory, yet on this motion to direct a verdict the court does not weigh evidence, but is required to take the view most favorable to the plaintiff.  The motion to direct a verdict for the defendant was properly overruled.

The court, at the request of the plaintiff, gave the following instruction to the jury:

"The court instructs the jury that if you believe, from a preponderance of all the evidence in this case, that while the plaintiff was at work for the defendant company he was

ordered or directed by a boss or foreman of the defendant company who had authority to represent the defendant company, to proceed with certain work the performance of which was attended with danger, and if you further believe that while attempting to carry out the said orders or directions the plaintiff was acting with a degree of prudence or care which an ordinarily prudent man of his age, knowledge and experience would exercise under the circumstances, then the plaintiff is entitled to recover, even if he had knowledge of the danger which attended the work in which he was engaged under such orders and directions."

This instruction was erroneous, inasmuch as it undertook to state the necessary grounds of recovery and omitted altogether the question of the defendant's negligence. The plaintiff's cause of action was founded on negligence. It was the alleged negligence of the defendant in giving an order to do a dangerous piece of work. The declaration alleged that the defendant knew, or by the exercise of reasonable care could have known, of the explosive condition of the metal and that the plaintiff did not know of the danger. That the uncovering of the molds was attended with danger is shown by the fact that the plaintiff was injured in doing it, but if the defendant had no reason to anticipate that danger there was no negligence in giving the order to do it. The duty of the defendant was neither to see that the plaintiff was not injured in doing his work nor to see that he was not exposed to danger in doing his work, but was only to use reasonable care to see that he was not unnecessarily exposed to danger. If the master negligently gives an order, in obeying which the servant is exposed to danger which he would not otherwise have encountered, the master may be held liable for an injury suffered by the servant; but an order given to a servant in the ordinary course of his employment, even though the act to be done is dangerous, does not make the master liable for an injury which he could not be expected to anticipate. All that is required

of the master is to use reasonable and ordinary care to avoid exposing his servants to unnecessary danger in doing their work.

The duty of the master in regard to the protection of the servant is thus stated in *Alton Paving Brick Co.* v. *Hudson,* 176 Ill. 270, on page 273: "One of the duties which a master owes to his servant is to make such provision for his safety as will reasonably protect him against the dangers incident to his employment. We said in *Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614, (on p. 626): 'As to the master's duty to give notice the law is, that if there are latent defects or hazards incident to an occupation, of which the master knows or ought to know, and which the servant, from ignorance or inexperience, is not capable of understanding and appreciating, it is the master's duty to warn or inform the servant of them,'—citing authorities. While it is true that an employee assumes such risks of his employment as are usually incident thereto and of the extraordinary hazards of which he has notice, or which, in the usual exercise of his faculties, he ought to have noticed, he does not take the risk of dangers known to the master which can be avoided by him in the exercise of reasonable care."

In *Chicago, Rock Island and Pacific Railway Co.* v. *Clark,* 108 Ill. 113, an instruction informed the jury that it was the duty of the master to inform his servants of all danger in and about the premises where they are required, by his authority, to perform labor, and that if the jury believe the stone platform where the deceased was injured was dangerous and the defendant failed to advise the deceased thereof, and the deceased did not know of such danger and could not have learned it by the use of reasonable care, and was thereby injured, then the jury should find the defendant guilty. The instruction was held to be manifestly wrong, and the court said (p. 119): "But the instruction announces that appellant was liable whether the company knew, or not, that it was dangerous. It informs the jury that if it was

dangerous they should find appellant guilty. This instruction was highly calculated to mislead the jury, and should not have been given."

The issue on trial was the negligence of the defendant. It was essential to the plaintiff's case that the order should have been negligently given. It was necessary to prove that the defendant knew, or by the exercise of reasonable care might have known, of the danger. Moore testified that it was the custom to leave the caps on ten minutes; that in his judgment, based on his experience, that was a sufficient length of time for the molds to cool, and that these molds had stood ten minutes. It was a question to be determined by the jury whether he knew or should have known of the danger of uncapping the molds at that time and whether he was negligent in giving the order. But the instruction made the case turn on the question whether or not he gave the order, and was therefore erroneous. In one of the defendant's instructions the jury were told that the giving of the order would not sustain a verdict for the plaintiff unless the jury should further find that the superintendent giving the order knew, or by the exercise of ordinary care might have known, of the danger of opening the mold at that time. But the former instruction directed a verdict and could not be corrected by another that was contradictory. "Given, as it was, on behalf of the plaintiff, it may have had the effect to nullify those given on the part of the defendant on the same point and may have confused and misled the jury." *Chicago and Alton Railroad Co.* v. *Platt,* 89 Ill. 141.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*