Joseph Kenny, Appellee, *vs.* The Marquette Cement
Manufacturing Company, Appellant.

*Opinion filed December 22, 1909—Rehearing denied Feb. 3, 1910.*

1. Negligence—*when the question of how injury was caused is
settled by Appellate Court's judgment.* If there is evidence fairly
tending to support the plaintiff's allegation that his injury was
caused by his clothing catching upon an exposed key-seat in the
protruding end of a revolving shaft, that question is conclusively
settled by the verdict of the jury and the judgment of the trial
court, as approved by the Appellate Court's judgment of affirmance.

2. Same—*an exposed key-seat in protruding end of revolving
shaft is dangerous.* An exposed and unused key-seat, some three
inches long, one-half an inch deep and five-eighths of an inch
wide, in the protruding end of a revolving shaft, with the metal
near the key-seat battered into a sort of hook, is dangerous to em-
ployees working about the shaft, and the master must be held to
have notice of such condition, where it is shown that his mill-
wright and foreman had known of it for a year.

3. Master and servant—*servant does not assume risk of dan-
gers known to master but not to servant.* A servant does not as-
sume the risk of dangers which are unknown to him, and which
he could not have known by the exercise of reasonable care, but
which are known to the master and could be avoided by the mas-
ter by the exercise of reasonable care on his part.

4. Same—*an habitually violated rule is treated as inoperative.*
While it is ordinarily negligence for a servant to violate a known
rule, yet if the rule is habitually violated with the knowledge and
acquiescence of the master the rule is treated as being inoperative.

5. Trial—*when permitting plaintiff to show violation of rule
as part of his case in chief is not error.* In an action by a servant
against the master for injuries received while trying to put a belt
on a pulley while the shaft was revolving, if the fact that such
practice was against a rule of the defendant is first brought out
upon the cross-examination of the plaintiff, it is not error to al-
low the plaintiff to thereafter show, as part of his case in chief,
that such rule was habitually violated.

6. Same—*what question to prospective jurors is improper.* It
is improper for the court to permit counsel for the plaintiff in a
personal injury case to ask prospective jurors whether they know
any of the officers or agents of a certain insurance company, but
it may not be reversible error to permit such question to be asked.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

This was an action on the case brought by appellee, Joseph Kenny, in the circuit court of LaSalle county, against appellant, the Marquette Cement Manufacturing Company, to recover damages alleged to have been sustained by reason of the negligence of said company. In the trial court judgment was rendered in the appellee's favor for $7500. This judgment, on appeal to the Appellate Court, was at first reversed with a finding of fact that the plaintiff had assumed the risk. A petition for rehearing was filed and allowed, and on rehearing the Appellate Court affirmed the judgment of the lower court. From this last judgment the cause has been brought to this court by appeal.

The declaration contained nine counts. The court directed a verdict for the defendant as to the fourth, fifth, seventh and ninth. The judgment and verdict for the complainant rest upon the first, second, third, sixth and eighth. These latter charge the operation of a cement factory by appellant and appellee's employment therein, and that appellee was injured while in the exercise of due care. All of these five counts upon which the judgment was obtained charged, in varying language, that the appellant negligently maintained and used a certain counter-shaft which was broken and uneven, in the end of which was a key-seat, groove or open space in which the clothing of one working about the shaft when it was in motion was liable to catch, and that appellee's clothing was so caught in said key-seat.

The appellee worked for the appellant as a laborer in its cement factory at·Portland, in LaSalle county, Illinois. The shaft and pulley on which appellee was injured were on the third floor of the mill. The shaft was turned by means of a belt coming up through the floor and encircling

a pulley other than the one in question. The pulley and belt with which appellee was working when injured were used to communicate the motion of the shaft to machinery on the second floor. The shaft had been moved to its then position about a year before from another place in the mill, and when so moved a pulley that was no longer needed had been taken off the north end, leaving about eighteen or twenty inches of the shaft extending to the north of the pulley about which appellee was working when injured. In this north end was a slot or key-seat about three inches long, one-half an inch deep and five-eighths of an inch wide, which had been used in fastening the pulley to the shaft. This key-seat and the eighteen inches of shaft north of the pulley were uncovered and unprotected, and the evidence does not show they were needed for any purpose.

McDougall, Chapman & Bayne, for appellant.

Coleman & Coleman, and H. M. Kelly, for appellee.

Mr. Justice Carter delivered the opinion of the court:

November 27, 1905, Kenny was directed by the foreman to go to the third floor, throw the belt off from the pulley on the shaft in question, thus stopping certain machinery below which was driven by that belt, and then go to the lower floor and do certain work. Appellee testified that it was also a part of this order that when he completed the work he should return to the third floor and put the belt on the pulley. The foreman denied that this was a part of the order given at that time. The appellee did the work he was instructed to do, and then returned to the third floor and tried to put the belt on the pulley while he was standing on the floor. He was not a large man, weighing 135 pounds, and being five feet five inches in height. The shaft was a foot or more above his head and the top of the pulley still higher. He testified the belt was greasy and

would not take hold of the moving pulley and throw itself on, so that he found himself unable from that position to get it on; that he then stepped upon the cross-piece of a framework which stood just east of the pulley, throwing his left arm around one of the two by four stanchions, so as to sustain himself while he took the belt in his right hand. As we understand appellee's evidence, he was then standing about two feet above the floor on a cross-piece of the skeleton partition, facing the north end of the shaft, and with his right hand he put the belt on the pulley. After this was done he started to get down, when the part of the shafting which extended beyond the pulley caught his clothing, swung him around the shaft several times, throwing his right hand and arm between the belt and pulley and finally tearing off his right hand. He then fell to the floor, stripped of all his clothing except his shoes and stockings. His right arm had to be amputated and he was bruised and severely injured otherwise.

At the close of the plaintiff's evidence, and again at the close of all the evidence, appellant moved to instruct the jury to find a verdict in favor of appellant. This motion in each instance was denied.

One of appellant's chief contentions is that there is no evidence to sustain the charge that appellee's clothing was caught in the key-seat or groove, the contention apparently being that appellee's hand was first caught between the belt and pulley and that the key-seat was not the proximate cause of the accident; that if appellee's hand had not been caught he would not have been drawn upon the shaft and his clothing wrapped around it. Appellee's testimony is to the effect that his clothing was first caught by the part of the shaft which extended beyond the pulley. The weight of the evidence in the record, in our judgment, indicates that when the clothing was taken from the shaft shreds of it were found in the key-seat. There was evidence tending to support the appellee's contention on this point,

hence, so far as that question is concerned, the verdict of the jury, and the judgment of the trial court thereon, having been affirmed by the judgment of the Appellate Court, are conclusive on this court.

The existence of this key-seat in the end of the shaft was uncontroverted, as was also the fact that it served no use or purpose at the place where the shaft was being used, and it seems also to be uncontroverted that most, if not all, of the eighteen inches of the shaft north of the first pulley was unnecessary as this shaft was then being used. There was evidence also to show that the metal near the key-seat had become bent, so as to form a hook on which clothing might easily catch, though some of the witnesses testified that they did not notice such a hook or battered condition of the shaft. We cannot see how the jury could fail to find that this end of the shaft was dangerous to employees who had occasion to work around it. The evidence shows that the existence of this key-seat was known to appellant's foreman when the shaft was placed in its position about a year before this accident, and it was also known to the millwright. It must therefore be held that it was known to appellant. The shaft was placed in that position by the direction of its superintendent, and he and the foreman in charge were responsible for taking off the pulley which had previously been upon the end of that shaft and leaving the key-seat unguarded. As so left it was dangerous to employees, and the appellant was charged with notice of such danger. When the shaft was in motion, the testimony shows, the key-seat was invisible.

Appellant contends that it must be presumed from this record that appellee had knowledge of the defect in this shaft and of the existence of this key-seat and that he assumed the risk, and therefore cannot recover. Appellee had no part in placing this shaft in that position or in removing the pulley from its end. His testimony is that he had never seen the key-seat and did not know it was there.

His duties required him to be in that room every morning, but it was for the purpose of inspecting certain clutches and elevator heads, and this was done while the machinery, including this shaft, was in motion. The evidence tended to show that appellee had assisted in mending certain belts in that room within a year, when the shaft was not in motion. The shaft was over six feet above the floor. The proof was that there was always much dust in this room, and that even when the shaft was not in motion the key-seat was not visible to anyone unless he stood near the shaft or directly north of it. The room was not very light at this point, even though there was no dust. The testimony does not show that appellee had ever been in a position where he could get a good view of the shaft when not in motion. No one testified that the appellee's attention had ever been called to this key-seat or that he had spoken of it to anyone.

Appellant insists that Kenny was an inspector, and that his duties were such that he should have noticed this key-seat and called it to the attention of his employer if he thought it dangerous. We think, if the evidence be fairly construed, appellee cannot be called an inspector. He was one of the repair gang under the foreman, Coleman, and most of his duties were not on the third floor but in other parts of the factory. While it was his duty to go to the third floor in the morning to inspect certain elevator heads and clutches, the machinery and this shafting were then in motion, and those parts of the machinery he was to examine were not near the north end of the shaft and did not call him to that part of the third floor where the key-seat would be visible if the shaft was not turning.

It is urged that once in each day the entire machinery was stopped for ten minutes while an inspection was made by the foreman and his men. Appellee's duties during this time were not on the third floor. If he finished his inspection before the machinery started again, it was his duty to

243 — 26

help someone else. That duty might call him to the third floor, but he was to go only to such places as he was sent by his foreman and there is no proof that he was ever directed to inspect this shaft.

There is much testimony concerning this shaft and key-seat and the amount of appellee's knowledge concerning them. We think we have stated the substance of it fairly. Under the circumstances we are unable to see how it can be said, as a matter of law, that he neglected any duty in failing to see this key-seat, or that he assumed the risk of its battered condition when he knew nothing of that condition, or that his duty required him to know of the condition. The rule is that the servant assumes the ordinary risks incident to his employment, but the law presupposes that the master has performed the duties of care, caution and vigilance which the law has placed upon him. The employee does not take the risk of dangers known to the master and unknown to himself, and which could not have been known by him by the exercise of reasonable care and which could be avoided by the master in the exercise of reasonable care on his part. (*Swiercz* v. *Illinois Steel Co.* 231 Ill. 456; *Superior Coal Co.* v. *Kaiser*, 229 id. 29.) On the state of the record on this question we think the question of assumed risk was one of fact for the jury. Whether this finding as made by the jury and approved by the Appellate Court is right or wrong does not arise here and cannot be inquired into in this court. *Chicago Union Traction Co.* v. *Ertrachter*, 228 Ill. 114; *Drake* v. *Lux*, 233 id. 522; *McCann* v. *Mayer*, 232 id. 507.

Notices were posted about this building, and had been for some time previous, which, among other things, forbade employees putting on a belt while the machinery was in motion. Appellee and another witness testified that on one occasion the foreman ordered the belt put on while the machinery was in motion, and when appellee pointed to the notice and asked about it the foreman said, "To hell with

that,—throw on the belt," whereupon appellee obeyed the instruction.   The foreman denied that he had given this special direction at any time to the appellee.   He admitted, however, that it was usual and customary to put the belts on while the machinery was in motion.   Several witnesses testified that the foreman had ordered the belt thrown on while the machinery was in motion; that this was the usual and customary way in which the work was conducted, and was done with the knowledge and approval of the foreman.   The appellee testified that he had seen the foreman put on this belt when the latter stood on one of the crosspieces.   As we understand the testimony of appellee and the foreman, this cross-piece was somewhat nearer the floor than the cross-piece on which appellee stood.   While it is usually negligence for an employee to violate a known rule, yet if the rule is habitually violated with the knowledge and acquiescence of the employer, then it is treated as inoperative.   (*Chicago and Western Indiana Railroad Co.* v. *Flynn*, 154 Ill. 448; *Hampton* v. *Chicago and Alton Railroad Co.* 236 id. 249.)   This testimony was introduced by appellee as a part of his proof in chief, and it is contended by appellant that this was error; that at the time of appellee's injury it was not a rule of appellant that the belt should only be put on when the pulley was not in motion, but testimony as to these notices would cause the jury to infer that the company was aware that was the only safe way to put the belts on, and negligently not only permitted but required them to be put on while the pulleys were in motion, and especially at the time the plaintiff was injured. Counsel for appellee asked him, during his main direct examination, about such rules.   On objection of counsel for appellant the court refused to allow him to answer.   On cross-examination of appellee by counsel for appellant the fact of these notices was fully gone into.   Much of this cross-examination as to the notices was objected to by counsel for appellee, but the objections were overruled by

the court. Counsel for appellant now contend that they did not insist in the trial court that these rules were in force. We think they are in error in this. One of the counsel for appellant stated during the examination of appellee that they contended that these rules were in force, both before and after the accident. While the mere fact that rules were posted in the factory was suggested in the direct examination of appellee, the contents of the rules were first brought to the attention of the jury by this cross-examination of appellee. In view of this state of the record we think there was no error in permitting appellee to show thereafter, in his case in chief, that these rules were not enforced.

Complaint is made of the refusal by the trial court of the fortieth instruction asked by appellant. It stated that certain evidence would not, of itself, "permit the *jury* to recover." Apparently this was a clerical error for "permit the *plaintiff* to recover." It is insisted that this was the only defect in the instruction, and that the court should have made the correction and given it. We regard the instruction as erroneous in other respects. It was not error to refuse an instruction improperly drawn. (*People* v. *Bolik,* 241 Ill. 394, and cases there cited.) Furthermore, other instructions given for the appellant covered all the material parts of the refused fortieth instruction. We think the jury were fully and fairly instructed.

While the jury were being empaneled appellee was permitted to ask certain jurymen, "Are you acquainted with any of the officers or agents of the Ætna Insurance Company?" This question was improper, and the objection to it should have been sustained by the trial court. (*Eldorado Coal Co.* v. *Swan,* 227 Ill. 586; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473.) We do not think, however, taking into consideration the entire record, that reversible error was committed in permitting this question to be asked.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*