## Abram Hammond, Appellee, v. Woodruff & Edwards Company, Appellant.

### Gen. No. 5568.

1. INSTRUCTIONS—*effect of motion to direct verdict.* The motion to direct a verdict is in the nature of a demurrer to the evidence and admits the truth of all that the evidence proves or tends to prove.

2. INSTRUCTIONS—*what upon quantum of proof proper.* An instruction is proper which tells the jury that the plaintiff is not bound to prove his case beyond a reasonable doubt but is merely bound to prove it by a preponderance of the evidence.

3. INSTRUCTIONS—*effect of refusal of cautionary.* The refusal of a cautionary instruction is not ordinarily ground for reversal.

4. INSTRUCTIONS—*effect of refusal of an instruction directing jury to disregard particular counts.* If there is one good count in the declaration upon which the verdict rendered can be sustained it is harmless error for the court to refuse an instruction which directs the jury to disregard a particular count or counts.

5. MASTER AND SERVANT—*limits of application of doctrine of assumed risk.* The rule is that the servant assumes the ordinary risks incident to his employment but the law pre-supposes that the master has performed the duties of care, caution and vigilance which the law has placed upon him.

6. MASTER AND SERVANT—*what risks not assumed.* The employe

does not take the risk of dangers known to the master and unknown to himself which could not have been known to him by the exercise of reasonable care and which could be avoided by the exercise of reasonable care on the part of the master.

7. EVIDENCE—*what not proper cross-examination.* Questions pertaining to matters not touched upon on direct are improper upon cross-examination.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1911. . Affirmed. Opinion filed March 13, 1912. Rehearing denied April 11, 1912.

FRANK M. COX and R. J. FELLINGHAM, for appellant; JOHN K. NEWHALL, of counsel.

CHARLES B. HAZLEHURST, C. F. IRWIN and WALTER E. HEALY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

In March, 1908, and for some time prior thereto, the Woodruff & Edwards Company conducted a general foundry business at Elgin, where Abram Hammond was employed as a moulder. Through the center of the building in which he worked, extending north and south, was the main passageway. On the east side of the passageway, a little north of the center of the building, was a cupola used for melting ore. About the middle of the north end of this room was a door leading into an adjoining building. Just east of this door was a wooden water barrel which had a capacity of about sixty gallons. The floor of the shop was of clay and the barrel was set about three feet deep in a pit dug in the floor, the top of the barrel extending about seven or eight inches above the ground. About two or three inches from the top of the barrel holes were bored, opening into the pit, and to the side of the pit a two inch pipe was connected, forming an outlet into the race. Water was

supplied by means of a pipe coming in over the top of the barrel. There was a plank platform about four or five feet square around the barrel, beneath which the outlet was located. The floor of the shop, on each side of the main passageway, was divided into moulding floors separated by gangways. The floor on which Hammond worked was located in the northeast corner of the shop and was about twelve feet wide and about eight feet east of the main passageway, and extended to the east wall of the building. Immediately south of his floor was a gangway about eight feet wide, separating his floor from Peterson's floor. Each moulding floor was provided with a number of flasks in which moulding sand was placed to receive the metal for the castings. Every day, up to 3 o'clock in the afternoon, the moulders would put the necessary sand into the flasks, after which the molten metal would be carried from the cupola in ladles and poured into them. At night other men would dump the sand out upon the moulding floors, put away the castings, take water from the barrel and sprinkle the sand to render it suitable for moulding the following day. On March 25, 1908, Hammond performed his usual duties until 3 o'clock in the afternoon, when the work of taking the metal from the cupola was begun. He examined his ladle and skimmer, found them ready for use, took his ladle to the cupola and filled it with molten metal. A fellow moulder helped him carry the ladle. Arriving at the moulding floor, they set the ladle down. Hammond took his skimmer and skimmed the slag off, and set the skimmer down on some sand in the gangway so that it leaned against Peterson's flasks. They poured the contents of the ladle into the mould and went back to the cupola for another ladle of metal. They carried the second ladle full to the moulding floor, and Hammond took his skimmer to skim the ladle. The moment the skimmer came in contact with the molten metal a violent explosion occurred, expelling the metal from the ladle

and throwing it upon him. It struck him about the head and body and burned his left eye severely. He was taken to his home and the following day to a hospital, where he received treatment for thirty-eight days, during which time his left eyeball was removed. He was unable to work for three months after the accident. He brought this suit in the Circuit Court of Kane county to recover for the injuries sustained. The declaration, in several counts, charged, among other things, that appellant negligently permitted the barrel to remain in such a leaky and dangerous condition that the water would flow down upon the moulding floor, rendering it wet, and permitted the floor to so remain, thereby rendering any skimmer used in skimming the molten metal in said foundry 'wet and dangerous to use in case such skimmer should be placed upon said floor or should be rested thereon; that appellant knew of the wet and dangerous condition of said floor, or by the exercise of reasonable diligence ought to have known it, and that appellee did not know of the danger and did not have equal means with appellant of knowing of the dangerous condition of the floor and of the place where he was required to work. There was a plea of not guilty. At the close of Hammond's evidence the company made a motion asking the court to direct the jury to find it not guilty, and with the motion tendered an instruction in writing to that effect. The court denied the motion and refused the instruction, whereupon the company elected to stand by its motion and offered no evidence. The jury returned a verdict of $2,500 for Hammond. Motions for a new trial and in arrest of judgment were denied, judgment was entered on the verdict and the company prosecutes this appeal.

Appellant first contends that the evidence does not show that the negligence charged was the proximate cause of appellee's injury.

The theory of the declaration is that water was negligently permitted to escape from the pit and so dampen the sand as to make it extra hazardous for appellee to perform his ordinary duties as a moulder; that appellant knew, or by the exercise of ordinary care might have known, that this would happen, and that appellee did not know and did not have an equal opportunity with appellant to know that it would occur.

The evidence shows that one morning three or four months before the accident, appellee noticed that the pit in which the barrel was set was overflowing, and that the water was running down on his floor underneath the sand and also on Peterson's floor; that he complained about this to appellant's foreman; that the foreman later brought some men, who took up the platform, did something with reference to the barrel and replaced the platform; that in the afternoon the foreman told appellee that he had fixed it so that the water would run off into the race. Arnold Flinty, a moulder who had been in the employ of appellant for about two years before the accident, testified that about three or four weeks before the accident he saw the water standing underneath the planks of the platform; that he told the foreman that the water had been draining off there and that the condition was dangerous and thereupon the foreman replied that if he did not like it he could quit. The attention of the foreman was on at least two occasions called to the fact that water was overflowing from the barrel or pit, and on the last occasion he did nothing to stop the overflow, and as he stood in the place of appellant, it follows that it had notice of the said condition. Whatever knowledge the foreman possessed in regard to the usage and dangerous condition of the water barrel, its appliances or the ground or floor of the foundry where appellee worked, appellant is chargeable with. C. & A. R. R. Co. v. Scanlan, 170 Ill. 106.

To allow the premises or machinery or appliances to be and remain out of repair when such conditions were known, or by the exercise of reasonable diligence might have been known and prevented, is negligence on the part of the master. National Syrup Co. v. Carlson, 155 Ill. 210. Flinty further testified that immediately after appellee was injured he went up to the place where the skimmer had stood; that he felt of the sand there and found that it was damp; that he then traced it along the floor, noticed that it went toward the barrel and found that it was damp from the place where the skimmer had stood up to the barrel; that in examining it he took some of the sand in his hand and squeezed it and it showed dampness; that upon looking through the cracks between the planks of the platform, he noticed that there was water standing around up close to the platform. The motion to direct a verdict, being in nature of a demurrer to the evidence, admitted the truth of Flinty's testimony and all inferences that might be fairly and rationally drawn from it. Missouri Malleable Iron Co. v. Dillon, 206 Ill. 145. Moreover his testimony was not contradicted. The evidence also shows that a piece of wet or rusty iron coming in contact with molten metal will cause an explosion; that the skimmer which appellee was using at the time of the accident was the same one used by him on the two days immediately prior thereto, and that it was not rusty; that the slag which sometimes remained on the skimmer and clings to it after it has been used would not cause an explosion, unless the skimmer were wet or rusty; that whatever sand lies on the floor, would, under ordinary and proper conditions, be dry at the time of the pouring off of the molten metal and would not stick to the skimmer. The jury were warranted in finding that the dampness which caused this explosion did not come from the sprinkling of the sand preparatory to moulding, but that water flowed out of

the top of the pit because the pipe was insufficient in size or was clogged up, and flowed over the floor to the place where appellee set his skimmer after the first skimming and so moistened the sand that it dampened the skimmer sufficiently to cause the explosion when it was used for the second skimming. We think the evidence clearly established that the negligence charged in the declaration was the proximate cause of appellee's injury.

Appellant also contends that wet sand is an ordinary incident to moulding and that appellee had a better opportunity or as good an opportunity as appellant to know that the sand was wet, and that he was negligent in not examining the skimmer each time before he used it, to see that there was no moisture on it, and that he assumed the risk of the presence of the wet sand; that it was the duty of appellee to inspect the pit and to see that no water was overflowing. The proof shows that it was only necessary to inspect the skimmer the first time it was used for the pouring off in the afternoon and that appellee handled his skimmer in the same way and placed it in the same place as was customary; that the slight moisture necessary in moulding sand was not sufficient to cause an explosion, because when the flasks are filled for the day's moulding, hot metal is poured into them, and if that amount of dampness would cause an explosion, then each flask would explode when the metal was poured into it, and there was no evidence that such an explosion had ever occurred. While appellee was bound to take notice of defects which were patent, he was not required to make an examination for hidden defects, and he might properly act upon the presumption that appellant had used reasonable care to keep the place and instruments in proper condition for moulding. Appellant knew that water had overflowed from the pit on at least two previous occasions. Appellee knew of only one of these occasions, and as

to that he was informed by the foreman that it had been repaired, and he had a right to rely on that statement. The rule is that the servant assumes the ordinary risks incident to his employment, but the law presupposes that the master has performed the duties of care, caution and vigilance which the law has placed upon him. The employe does not take the risk of dangers known to the master and unknown to himself, which could not have been known to him by the exercise of reasonable care and which could be avoided by the exercise of reasonable care on the part of the master. Superior Coal Co. v. Kaiser, 229 Ill. 29; Swiercz v. Illinois Steel Co., 231 Ill. 456; Kenny v. Marquette Cement Co., 243 Ill. 396. We think, from the evidence in this record, that the question of assumed risk was one of fact for the jury. Appellant's argument that it was the duty of appellee, under his master's orders, to inspect the barrel and pit and keep it from overflowing is not warranted by the proof. When the defective condition had been repaired some months before, the foreman said to appellee that the company had to pay for all the water that came through that faucet and told him that if he saw the faucet open and the water running when the men were not using it he should close it so as to reduce the cost of the water to the company. There was no proof that water was running at this particular time, or that appellee saw it running, or that he did not obey the injunctions of appellant whenever he saw that condition. The foreman did not direct him to exercise any supervision over the barrel or pit. Appellee's business was that of a moulder. He had no occasion to go upon the platform or to look underneath it to investigate conditions. Appellant found it necessary to take up the platform when it repaired the defective condition previously. There certainly was no duty devolving upon appellee that would require him to remove the platform and examine the pit and overflow pipe.

Appellant complains that the court erred in admitting and excluding evidence. The argument of counsel in support of this contention is directed mainly to the ruling of the court in refusing to permit it to ask certain questions on cross-examination of a number of appellee's witnesses. In each case the witness had not been interrogated upon the subject which the cross-examiner sought to develop. These witnesses were servants of appellant, and all but one in its employ at the time of the trial. Appellee called them to describe the arrangement of the rooms in the foundry, the ladle, the water barrel and pit, but did not interrogate them concerning the circumstances relative to the happening of the accident. Appellant, if it desired to make these inquiries, should have called them as its own witnesses after appellee had rested his case. In Jones on Evidence, 2nd Ed., Sec. 820, that author, after stating the English rule on this subject, then says: "The rule which was long ago declared by the Supreme Court of the United States, called the American rule, and which prevails in most of the states, is quite different. The cross-examination can only relate to facts and circumstances connected with the matters stated in the direct examination of the witness. If a party wishes to examine a witness as to other matters, he must do so by making the witness his own." Anheuser Busch Brewing Ass'n. v. Hutmacher, 127 Ill. 652; Hansen v. Miller, 145 Ill. 538; Schmidt v. Chicago City Ry. Co., 239 Ill. 494. In Hansen v. Miller, *supra,* the court said: "If the defendant desired to examine the plaintiff in relation to matters to which he had not testified in chief, he was at liberty, at the proper time, to make him his own witness and examine him as to such matters. But the plaintiff was entitled to have the rule of evidence so applied as to confine the cross-examination to the matters brought on the direct examination." So in Schmidt v. Chicago City Ry. Co., *supra,* it was

said: "A cross-examination must be limited to facts elicited by the examination in chief." We find no harmful error in ruling upon the admission of evidence, and no infringement or curtailing of the rights of appellant in cross-examination.

Appellant complains of the giving of appellee's instructions No. 4, 15, 17 and 23.

The 4th advised the jury as to the measure of damages in case they returned a verdict in favor of appellee. Appellant cites no authority and urges nothing in argument in support of its criticism of this instruction except that it was an improper statement of the law and should have been refused. This instruction is substantially in the same language as an instruction given in the case of Cicero Street Ry. Co. v. Brown, 193 Ill. 274, which has since been approved in Chicago Terminal R. R. Co. v. Gruss, 200 Ill. 195; Chicago City Ry. Co. v. Gemmill, 209 Ill. 638; Chicago and Milwaukee Electric Ry. Co. v. Ullrich, 213 Ill. 170; National Enameling Co. v. McCorkle, 219 Ill. 557.

The 15th instruction told the jury that appellee was not bound to exercise an extraordinary degree of care; that all that was required of him was to exercise ordinary care, etc. An instruction identical in principle with this instruction was fully considered and approved in C. & A. R. R. Co. v. Pearson, 184 Ill. 386, and also approved and followed in Dickson v. Swift Co., 238 Ill. 62.

Appellee's 17th instruction read that the plaintiff was not bound to prove his case beyond a reasonable doubt, but was merely bound to prove it by a preponderance of the evidence. This instruction was approved in Consolidated Traction Co. v. Schritter, 222 Ill. 364, and is also sustained in Taylor v. Felsing, 164 Ill. 331; Chicago City Ry. Co. v. Bundy, 210 Ill. 39; Chicago City Ry. Co. v. Nelson, 215 Ill. 436; Pier-

son v. Lyon & Healy, 243 Ill. 370, and other cases that might be cited.

The 23rd instruction told the jury of the risks a servant assumed. An instruction similar to this instruction was held to state the law correctly in Mann v. Illinois Central Traction Co., 236 Ill. 30.

The court refused appellant's instructions from 24 to 36 inclusive.

The 24th, 26th, 27th and 36th instructions related to the law of assumed risk and contained objectionable features in assuming various facts of negligence and charging appellee therewith, but so far as they contain correct statements of the law as applied to the facts in the case, they were fully covered by other instructions given on behalf of appellant. "The court is not required to give the jury more than one instruction upon a particular subject." National Enameling Co. v. McCorkle, *supra*.

Appellant's 25th and 28th instructions were cautionary. Instructions of this character may properly be given, but giving them is necessarily a matter very much within the discretion of the court, and their refusal cannot ordinarily be assigned for error. Birmingham Fire Ins. Co. v. Pulver, 126 Ill. 329; Chicago Union Traction Co. v. Goulding, 228 Ill. 164; Donk Bros. Coal Co. v. Thil, 228 Ill. 233. Moreover, appellant's 2nd and 10th given instructions contained the same cautions as its 25th and 28th refused instructions.

The 29th, 30th, 31st, 32nd, 33rd, 34th and 35th were instructions directing the jury to disregard the several counts of the declaration. As each count of the declaration stated a cause of action, and as several of them were clearly supported by the evidence, there was no error in the refusal of any of these instructions, as it is a familiar doctrine that where any count of the declaration is sufficient and the negligence therein charged is established, a recovery may be had

upon such count, and it is not reversible error to refuse to instruct the jury to disregard other counts in the declaration which are not supported by the proof. Chicago City Ry. Co. v. Foster, 226 Ill. 288; Scott v. Parlin & Orendorff Co., 245 Ill. 460.

Upon the whole record we are satisfied that substantial justice has been done, and there has been no reversible error in matters of procedure.

The judgment is affirmed.

*Affirmed.*