Josephine Surinak, Administratrix, Appellee, v. Elgin, Joliet & Eastern Railway Company, Appellant.

Gen. No. 7,425.

1. MASTER AND SERVANT—*when section hand engaged in interstate commerce.* A section hand was engaged in interstate commerce while carrying dirt from between two of defendant's tracks which were not used in interstate commerce across the third track upon which he was struck, and which was used in such commerce.

2. APPEAL AND ERROR—*refusal to determine propriety of instruction in favor of appellant.* Whether an instruction was proper need not be determined on appeal where it was in favor of appellant.

3. MASTER AND SERVANT—*proximateness of defendant's negligence as cause of servant's injury as question of fact.* It was at least a question of fact for the jury whether defendant's negligence was the cause of an injury to one of its section men where the operator of the power speeder which struck deceased testified that he did not see deceased until he was within about 100 or 150 feet of him because of obstructions, when he sounded the horn, applied the brakes and shouted but did not run the speeder off the track as he could have done.

4. DAMAGES—*excessiveness of verdict.* A verdict for $5,000 cannot be said to be excessive for the negligent death of a man 58 years old who was apparently in good health and for many years had worked constantly at a salary of $80 per month.

5. MASTER AND SERVANT—*when negligence of coemployee not risk assumed by railroad section man.* The negligence of another employee, not a fellow servant, in operating a power speeder along the tracks upon which a section man was working, was not a risk assumed by such section man.

6. MASTER AND SERVANT—*sufficiency of evidence as to cause of death of servant from personal injury.* The finding of the jury that the death of deceased was due to an injury to his leg was supported by evidence that after the injury his leg was badly swollen for several weeks and after being taken to a hospital deceased fell when returning from the bathroom and died within a few minutes, where it was not claimed that his death was caused by the fall and the medical testimony was in conflict as to whether a blood clot found in the heart was caused by the condition of the leg.

Appeal by defendant from the Circuit Court of Will county; the Hon. FREDERICK A. HILL, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed January 31, 1925. Rehearing denied April 9, 1925. *Certiorari* denied by Supreme Court (making opinion final).

KNAPP & CAMPBELL and DONOVAN, BRAY & GRAY, for appellant; JAMES A. BRAY and JOSEPH L. EARLYWINE, of counsel.

J. W. & J. HAROLD DOWNEY, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Josephine Surinak, administratrix of the estate of Joseph Surinak, deceased, obtained a judgment for $5,000 in the circuit court of Will county against appellant, Elgin, Joliet & Eastern Railway Company, for the death of her intestate, and this appeal followed.

Surinak was a section man employed by appellant in its yards in the City of Joliet. On June 10, 1922, he was struck by a gasoline car or speeder, one of

his legs was injured and he died on July 18, 1922. The accident occurred about 200 feet north of Jackson street. Jackson street extended east and west and crosses the tracks of appellant and of the Chicago & Alton Railroad at grade. At this point the appellant had three tracks extending north and south, and immediately adjoining these tracks on the west were the tracks of the Chicago & Alton Railroad. The east track of appellant was called the down-town main and it terminated at Cass street several blocks south of Jackson street. These tracks extended north from Jackson street and curved to the northeast. Just north of Jackson street there was a crossover between appellant's tracks and the tracks of the Chicago & Alton. Clay street, which was the next east and west street north of Jackson street, terminated at the railroad tracks and there was no crossing there. The next east and west street north of Clay street was Ohio street. Surinak, at the time of the accident, was cleaning up dirt between the two west tracks of appellant. Dan Boucher, an engineer for the Chicago & Alton, was in his engine about 100 feet west of the place of the accident. He saw Surinak when he was hit. The only other witness was Leo Gawanda, who operated the speeder. Gawanda was a terminal man in the employ of appellant and that morning had been working in the yards of the Illinois Steel Company some distance north of Jackson street. He had received his pay check and about 11 o'clock started south on this speeder to Cass street to cash his check. His car was on the east track and he testified that as he approached Jackson street his view to the west was obstructed by cars on the middle track of appellant. He testified he did not see Surinak until he was about 100 or 150 feet from him. Surinak, with a shovel full of dirt, started to walk east towards the track upon which the speeder was approaching. Gawanda testified he shut off the power, applied the

brakes, sounded the horn and shouted as loud as he could; that his motor was running about ten miles an hour when he first saw Surinak, which speed was gradually reduced until it was running two or three miles an hour at the time of the accident. The motor struck Surinak on the leg and the front wheels were derailed. Surinak was knocked down. Gawanda testified he helped him up, but a switch engine was following on the same track, and he put his motor car on the track and proceeded south to Cass street. Surinak was removed to his home in an ambulance and was put to bed. His leg was discolored, and swollen to almost twice its natural size and it was impossible to get off his underwear without cutting it. He was attended by Dr. Huey, who was in the employ of appellant. The family was not satisfied and Dr. Shutack was called. On July 16, Surinak was removed to a hospital. On the morning of July 18, while returning to his bed from the bathroom, he fell and struck his head against a screen, causing an abrasion about a half inch in diameter. He became cyanotic, gasped for breath and died in a very few minutes. A postmortem was held by the coroner of Will county and Dr. Huey. Surinak had been employed by appellant as a section hand for 20 years. He was 58 years of age, was apparently in good health and was earning about $80 per month.

The suit was brought under the Federal Employers' Liability Act. The declaration consisted of two counts, each charging general negligence.

It is insisted that the evidence does not show that at the time of his injury the deceased was engaged in interstate commerce. In support of this contention it is claimed the deceased was cleaning up dirt between the two west tracks which were mere switch or stub tracks and that the only track which was employed in interstate commerce was the east track, and for that reason he was not engaged in interstate com-

merce. In support of this contention *Patry v. Chicago & W. I. R. Co.*, 265 Ill. 310, and *Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473 [10 N. C. C. A. 153] are cited.

There is evidence in the record to the effect that the appellant was engaged in interstate commerce; that its railroad extended from Porter, Indiana, to Waukegan, Illinois; that there were connecting tracks from the main line to the track that went down town in the City of Joliet; that appellant had three tracks crossing Jackson street; that there was a connection between the Chicago & Alton tracks and appellant's tracks between Ohio street and Jackson street which connection was used to transfer cars that came from East Joliet; that there were crossover connections between the tracks that came down town to the Chicago & Alton Railroad and to the Santa Fe Railroad in the City of Joliet north of Cass street and south of Columbia street; that appellant crossed either at grade, or over, or under, every railroad that ran into the City of Chicago, commencing at Porter, Indiana, and extending around the outer belt line, as the appellant line is called, to Waukegan, Illinois. It was stipulated that the east track upon which deceased was struck was a track employed in interstate commerce.

The party injured must be engaged in interstate commerce at the time of his injury. The deceased was employed by appellant who was engaged in interstate commerce. It was the duty of the deceased to clean up the dirt which fell from the cars as they passed over these three lines of track. Even if it be conceded that he was, just prior to his injury, engaged in gathering up a shovel full of dirt between the two west tracks and that he started across to the east track to deposit it on the east side thereof, we think it is placing a strained construction upon the law to say that he would be engaged in interstate commerce while

at work on the east track and that he would not be engaged in interstate commerce while carrying dirt from between the two west tracks east across the first track. We are of the opinion that the evidence amply sustains the charge in the declaration that the deceased was engaged in interstate commerce at the time of his injury.

It is next contended that the appellant was not guilty of the negligence charged. The only charge in the declaration is general negligence. There were only two witnesses to this accident who testified. Boucher, the engineer, testified there were two men on the speeder at the time the deceased was struck, but Gawanda testified he was the only one on the car. He testified that as he went south on the east track his view was obstructed by cars on the tracks west and that he did not see deceased until he was within 100 or 150 feet of him. He applied the brakes, sounded his horn, and shouted at the deceased, who apparently did not see or hear him. He testified that when he applied the brakes the wheels locked and slid for a distance of 100 or 150 feet. He also testified there was nothing to prevent him from running the speeder off the track over to the east side but that he did not do so.

It is claimed by appellant that under authority of *Sierzchula v. Chicago & A. R. Co.*, 209 Ill. App. 15, section men on a railroad under these conditions are required at their own risk to look out for trains and engines passing along the railroad, and on the strength of that authority the court gave the sixteenth instruction on behalf of appellant. Appellee insists that the case cited is not authority because the facts are not identical, and for this reason the court erroneously instructed the jury. It is not necessary for us to determine whether the facts of this case come within the case cited. The instruction given was in favor of the appellant and if the jury decided con-

trary to the instruction appellant was not injured by the giving of the instruction. We think the evidence shows that appellant was guilty of the negligence charged. To say the least, it was a question of fact for the jury. Under the evidence we do not feel justified in interfering with their finding.

Appellant contended that the deceased was guilty of contributory negligence. Under the Federal Employers' Liability Act [Cahill's Ill. St. ch. 114, ¶ 321 *et seq.*], contributory negligence is not a defense in a suit of this kind. The only effect of contributory negligence is to reduce the amount of the damage, so this assignment of error only goes to the question of the size of the verdict. The evidence shows the deceased was 58 years old. He apparently had been in good health for many years and had worked constantly at a salary of about $80 per month. Under these circumstances we are not prepared to say that the judgment of $5,000 was excessive.

It is next insisted that the deceased assumed the risk of his employment and for that reason cannot recover. The rule is that the servant assumes the ordinary risks incident to his employment, but the law presumes that the master has performed the duties of care, caution and vigilance which the law has placed upon him. The employee does not assume the risk of dangers known to the master and unknown to the servant, and which could not have been known by him by the exercise of reasonable care, and which could be avoided by the master in the exercise of reasonable care on his part. The question as to whether or not the employee assumes the risk of his employment is a question of fact for the jury. *Superior Coal & Mining Co. v. Kaiser,* 229 Ill. 29; *Swiercz v. Illinois Steel Co.,* 231 Ill. 456; *Kenny v. Marquette Cement Mfg. Co.,* 243 Ill. 396. The party injured does not assume the risk of negligence by other servants who were not his fellow servants, unless it is customary

to do the work in that way. *Chicago & E. I. R. Co. v. White,* 209 Ill. 124. Under these authorities the deceased was required to look out for engines and cars while in the performance of his duty, but he was not required to look out for the negligence of another employee of appellant who was not his fellow servant, and he was not required to assume risks not incident to his employment. The risks assumed by the deceased did not preclude a recovery.

It is next insisted that Surinak's death was due to an embolism which was in no way connected with his injury. As before stated, the evidence shows that immediately upon being struck by the speeder he was removed to his home in an ambulance and put to bed. His legs swelled considerably and he was in great pain. He remained at home for several weeks and the swelling went down to some extent when he was removed to the hospital. He remained in the hospital for a short time, and upon returning from the bathroom fell, and died in a very few minutes. It is not claimed his death was caused by the fall or by striking his head against the screen. Immediately after his death there was a post-mortem examination. There is some controversy as to whether this post-mortem was conducted according to the usual medical method. Five physicians testified upon the trial. Those who were called on behalf of the appellant testified that the post-mortem showed a severe form of myocarditis or degeneration of the heart muscles, disclosed a large clot in the left ventricle which was fastened to the wall of the ventricle and which was commonly known as a thrombus. This thrombus was about two inches long, one and one-half inches wide, and the physicians on behalf of appellant testified that it could not have been caused by the injuries which the deceased received. These physicians testified deceased died of an embolism of the brain which resulted from a separation of a part of the thrombus

in the left portion of the heart; that this thrombus had no connection with the injury in the leg for the reason that it was in the left side of the heart and could not have originated from an injury to the leg for the reason that the blood in the leg would have to first pass through the small capillaries of the lungs before it could reach the left side of the heart which was physically impossible.    One of the physicians called on behalf of the appellant testified that he could not say whether the condition of the leg contributed in any way to the condition found in the heart because he did not know anything about the man's symptoms from the time he was injured until the date of his death.   He testified the condition found could be caused by any condition of septicemia, or a high fever over a prolonged period.   On the other hand, the evidence on behalf of appellee was to the effect that the death was caused by the injury to his leg. One of the physicians who testified on behalf of appellee, in our judgment, had greater opportunity to know of the facts outside of the post-mortem than any other of the witnesses in the case.   There was evidence sufficient to justify the finding of the jury upon this point and we would not be justified in setting aside the verdict on that account, unless it was clearly contrary to a weight of the evidence.   We think the finding of the jury on this point is not contrary to the weight of the evidence and should not be set aside.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*