ELISHA ADAMS, Appellee, *vs.* THE CLEVELAND, CINCIN-
    NATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY,
    Appellant.

*Opinion filed December 22, 1909.*

1. APPEALS AND ERRORS—*the Supreme Court cannot consider
weight of evidence in negligence cases.* If there is any evidence
fairly tending to support the plaintiff's case as laid in his decla-
ration the trial court should submit the case to the jury, and if a
verdict and judgment result and that judgment is affirmed by the
Appellate Court, it is conclusive upon the Supreme Court of the
questions of the weight of the evidence and credibility of witnesses.

2. NEGLIGENCE—*plaintiff not required to prove every element
by positive proof.* The plaintiff in a personal injury case is not
required to prove by direct and positive evidence everything nec-
essary to entitle him to have his case submitted to the jury, and
he is entitled to the benefit of all legitimate inferences that may
be justifiably drawn from the circumstances proven.

3. SAME—*whether rate of speed is negligence depends upon
circumstances.* Whether the rate of speed at which the car which
injured the plaintiff was traveling shows negligence depends to
some extent upon the location, circumstances and surroundings.

4. TRIAL—*when a personal injury case should go to jury.* A
personal injury case should go to the jury where there is evidence
tending to show that the plaintiff, a supply-man in the defendant's
employ, was injured while performing a duty, under the direction
of his foreman, in the night time, at a place in the yards where
he had never been sent before and where his usual duties did not
require him to be; that he raised his lantern and looked both ways
before stepping on a certain track but did not see a caboose which
had no light, and which had been "kicked" down the track with
sufficient force to carry it from seventy to one hundred feet, with
the brakes set, after it struck him.

APPEAL from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit Court
of Coles county; the Hon. M. W. THOMPSON, Judge, pre-
siding.

GEORGE B. GILLESPIE, (L. J. HACKNEY, HAMLIN, GIL-
LESPIE & FITZGERALD, and ANDREWS & VAUSE, of coun-
sel,) for appellant.

CRAIG & KINZEL, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellee was employed by appellant as a supply-man or helper in and about its round-house in Mattoon, Illinois. His duties were to supply engines that came into the round-house with oil, waste, lanterns, tools and such other things as they were required to be supplied with and to obey the orders and instructions of the foreman of the round-house. While thus employed he was struck and run over by a caboose to which no engine or other car was attached, and so injured that both legs were required to be amputated. This action was brought to recover damages for said injury. A judgment in favor of appellee for $2000 in the circuit court has been affirmed by the Appellate Court, and the case is brought to this court by appeal to reverse the judgment of the Appellate Court.

The declaration, in substance, avers that at the time of the injury plaintiff was engaged in the performance of an order and direction of the foreman to supply a certain engine, No. 728, with a globe; that in performing this duty it became necessary for him to cross and re-cross over the tracks of defendant, and while so engaged, using due care for his own safety, defendant, by its servants, negligently and carelessly uncoupled and detached a car from a locomotive engine, then being pushed in front of said engine, and negligently and carelessly drove said car at a high rate of speed along the track over which it was necessary for plaintiff to cross and re-cross in the discharge of his duty; that said car had no light thereon and no person upon it in such place as to warn plaintiff of its approach and no signal was given of its coming, whereby it struck and injured the plaintiff.

The yards of appellant at Mattoon are of a somewhat extensive character and cover considerable territory and a

large number of tracks are laid and used in said yards. The round-house, store room and yard office are located well to the western part of the yards and on the north side of the tracks. The yard office, which, as we understand, was the office of the foreman and the place from which he usually gave his orders and directions to subordinates, was about three hundred feet west of the place where the injury occurred. It was about 9:30 o'clock P. M. when appellee was directed to place a globe on engine 728. He did not know where the engine was, and being unable to find it in the neighborhood of the yard office or round-house, reported to the foreman his inability to find it. Further investigation resulted in the engine being located on what is known as track No. 7, east of the yard office and east of where that track is crossed by what is known as the "ladder track." There were eleven tracks of the appellant, lying parallel with and very near to each other, at the place where the injury occurred. Track No. 1 was the south track and No. 11 the north track. The ladder track, starting at track No. 11, crossed and connected with all the tracks south of No. 11, to and including track No. 4. It was provided with switches, so that cars could be run from it upon any track from No. 4 to No. 11, inclusive. It ran in a slightly south-west and north-east direction and crossed the other tracks diagonally. The engine appellee was directed to place the globe upon was found by him standing on track No. 7, a short distance east of where that track was crossed by the ladder track. Appellee placed the globe on the engine, then turned and started to retrace his steps back to the yard office. In doing so he was obliged to cross the ladder track, which was at that place but a few feet from track No. 7, and several other tracks. He testified that as he started from the engine to pass over the ladder track he threw his lantern up and looked both ways to see if any car or engine was approaching and that he neither saw nor heard one. He was struck at the south

243—13

rail of the ladder track and so badly injured that both his legs were amputated. The caboose that struck appellee had been detached from the engine and "kicked" with sufficient force to send it eastward over the ladder track to track No. 10, which is the track it was intended to place it upon. The distance from the place where it was detached from the engine and "kicked" to track No. 10 was three hundred or more feet west of the place of injury. The movement of the caboose was also assisted, after being detached from the engine, by the grade of the surface, it being down-grade from west to east.

The only assignment of error relied on and discussed in appellant's brief is that the court erred in not directing a verdict in its favor, request to that effect having been presented to the court at the conclusion of appellee's evidence and again at the conclusion of all the evidence. Appellant contends the verdict should have been so directed because there was no proof of its negligence, because the proof did not show appellee was in the exercise of reasonable care, because the evidence showed the appellee was guilty of contributory negligence, and because the injury resulted from one of' the risks assumed by appellee.

In the elaborate briefs of both parties to this appeal the evidence is set out and its weight and the credibility of the witnesses fully discussed. It is not our province to pass upon the weight of the testimony nor the credibility of the witnesses. We are only required to look into the evidence for the purpose of determining whether there was any proof fairly tending to support the plaintiff's case as laid in his declaration. Where there is such proof the trial court should submit the case to the jury, and if a verdict and judgment result and that judgment is affirmed by the Appellate Court, it is conclusive upon us as to the sufficiency of the proof. (*Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206; *Zetsche* v. *Chicago, Peoria and St. Louis Railway Co.* 238 id. 240; *Balsewicz* v. *Chicago, Burling-*

*ton and Quincy Railroad Co.* 240 id. 238.)   Applying these
rules, appellee's proof tends to show that when injured he
was in the performance of duty under the direction of the
foreman, in the night time, at a place in the yards where
he had never been sent before and where his usual duties
did not require him to be; that before he started to cross
the ladder track he looked both ways and saw no car ap-
proaching.   The car that struck him was a caboose which
had been "kicked" down the track by an engine from
which it was detached.   There is no direct proof as to the
rate of speed the caboose was moving.   After passing over
appellee it continued moving for a distance of seventy to
one hundred feet before it was stopped, notwithstanding a
witness testified he was a brakeman on the caboose at the
time, and further testified that he saw appellee and hallooed
to him just as the caboose was upon him and set the brakes.
Speed is a relative term, and whether a given rate con-
stitutes negligence must to some extent depend upon the
location, conditions and surroundings.   It is usually a ques-
tion for the jury to determine.   Appellee was not required
to prove everything necessary to entitle him to have his
case submitted to the jury by direct and positive evidence.
He was entitled to the benefit of all legitimate inferences
that might be justifiably drawn from the circumstances
proven.   (*North Chicago Street Railroad Co.* v. *Rodert,*
203 Ill. 413.)   The fact that appellant's proof was in con-
flict with the appellee's, or that its witnesses testified to
facts and circumstances at variance with those testified to
by the witnesses for appellee, raises no question for our
consideration upon the errors assigned.

We shall not attempt to further review or set out the
evidence of the respective parties.   It is sufficient to say
that we have examined it and are satisfied the trial court
was justified in submitting the case to the jury.   That be-
ing true, the judgment of the Appellate Court is conclu-
sive, and its judgment is affirmed.      *Judgment affirmed.*