John F. Devine, Administrator, Appellee, v. Grand Trunk Western Railway Company and Patrick J. Forbes, Appellants.

Gen. No. 18,979.

1. MASTER AND SERVANT, § 222*—*when railroad liable for death of switchman resulting from negligent order.* Where a foreman of a switching crew ordered certain cars standing on a switch track to be switched on another switch track, and after the engine had removed them from the track on which they were first standing the foreman changed his order and signaled for one of the cars to be "kicked" back on the same track, and the car so "kicked" back ran over and killed a member of the switching crew who was waiting for the cars to be switched on the other track and had no knowledge of the change in the order, *held* that the switchman's death was caused by the negligent order of the foreman as vice principal, and that the fellow-servant rule and the doctrine of assumed risk were inapplicable to the case.

2. MASTER AND SERVANT, § 221*—*when foreman and employer jointly liable.* Where a foreman of a switching crew gives a negligent order in violation of a common duty owed by the railroad company and himself to another switching employee, both the foreman and the railroad company are joint tort feasors, and are jointly liable.

3. DEATH, § 50b*—*when proof on subject of due care sufficient in absence of eyewitness.* In an action against a railroad company to recover for the wrongful death of a switchman, where there was no eyewitness of the accident or what the switchman was doing at and just before he was killed, evidence on the question of ordinary care *held* sufficient to sustain a verdict, where witnesses testified that he was a competent, sober and careful switchman and that such was his reputation.

4. DEATH, § 50b*—*when proof of age of deceased sufficient to sustain verdict.* Proof of the age of plaintiff's intestate in an action for wrongful death, *held* sufficient to sustain a recovery, where the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

only reference thereto as shown by the record was a statement of plaintiff's counsel to the effect that he offered in evidence certain life tables showing the expectation of a life of a man thirty-four years old, and it appeared the defendant allowed the tables to be read to the jury unchallenged or without in any way questioning the truth of the statement of plaintiff's counsel.

5. DEATH, § 67*—*when damages not excessive.* A verdict awarding ten thousand dollars for wrongful death of a railroad switchman *held* not excessive under the evidence.

Appeal from the Superior Court of Cook County; the Hon. HUGO PAM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed October 7, 1914. Rehearing denied October 19, 1914.

KRETZINGER & KRETZINGER and L. L. SMITH, for appellants.

E. W. AUSTIN and CHARLES C. SPENCER, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Appellee recovered a judgment of ten thousand dollars for the death of William H. Varnholtz. The evidence disclosed that Varnholtz was employed as head switchman by the appellant Railroad Company in its switch yards north of 55th street in Chicago. The other members of the crew were Patrick J. Forbes, conductor and foreman and one of the appellants; Dunsworth, rear switchman; Rathbun, engineer; and Lang, fireman. The switch yards contained sixteen tracks, including one main southbound and one main northbound track. Varnholtz worked there altogether only four nights, the crew being a night crew. On the night of September 16, 1909, the crew began work about seven o'clock. Early that night they had taken twelve cars off of switch track No. 8 and placed them on switch track No. 9 by taking them south beyond switch track No. 8 and thence backing them north on track 9 east of track 8. Those cars were loaded and carded

for different roads, but were to remain on the hold tracks for further instructions. After their night meal Forbes, as foreman, gave orders to Varnholtz and Dunsworth to place the cars on track 9 back on track 8. Dunsworth and Varnholtz proceeded to execute that order and rode on the footboard of the engine headed north down the lead to those cars. Varnholtz stepped off and coupled the engine to those cars, and then remained there on the east side of track 9. In obedience to a signal by Dunsworth the engineer moved south on track 9 towards the south end of track 8, pulling thirteen cars, including the twelve that had previously come from track 8. Dunsworth, while walking south towards Forbes, noticed the extra car to the rear of the twelve, and said to Forbes: ''You will have to kick that car in there again. It is not wanted over on 8.'' The thirteen cars were then quite a distance south of Varnholtz and near the place where they were to have been stopped and backed onto track 8 by Forbes' order. Forbes then, without notice or warning to Varnholtz, ordered Dunsworth to kick back on track 9 the extra car, called in the record a ''Swift freezer,'' and at the same time himself gave a signal to the engineer to ''back up,'' and uncoupled the Swift freezer from the twelve. The engineer at once backed or moved his engine to the north, and the Swift freezer was thus kicked back on track 9 at the rate of from four to six miles an hour against Varnholtz, and he was thus knocked down and killed on that track about 12:40 a. m.

All of the six counts of the declaration were taken from the consideration of the jury on motion of appellants, except the fourth count, which charged that Forbes was foreman of the crew with authority to distribute and place the cars in the yards, and that it was the duty of the crew, including the deceased, to obey Forbes' orders and to distribute and place the cars at the points designated by his orders; averred the giving of the order by Forbes to remove the cars

on track 9 to track 8 as aforesaid, and his change in that order without notice or warning to Varnholtz as, to the Swift freezer, and that by reason of his negligence in so ordering the Swift freezer kicked back on track 9 without notice, etc., that Varnholtz was struck and killed by said car while crossing over track 9, using due care, etc.

It is urged by appellants that the evidence in the record does not support the verdict and judgment, and that their motion to direct a verdict as to the fourth count should have been given. Four propositions are discussed in support of that contention: (1) That appellants were not guilty of the negligence charged; (2) that Varnholtz and Forbes were fellow-servants; (3) that Varnholtz assumed the risk; and (4) that he was guilty of contributory negligence.

First. Appellant Forbes testified that as foreman of the switching crew his duties were to instruct the men of his crew what to do and to see that all the cars went to their proper places. These were his duties as boss or as vice-principal of the railroad company. He also assisted when necessary or convenient in the execution of his orders by giving signals, throwing switches, coupling and uncoupling cars, etc., and in that work his acts were usually those of a fellow-servant. An examination of the evidence shows clearly that by his testimony, that it was his duty "to instruct the men of his crew what to do," he meant that it was his duty to tell them on what tracks and at what points the various cars in the yards were to be placed, and to indicate or direct the various movements and disposition of cars in accomplishing his orders for distributing and placing the cars that were carded and directed for shipment on the various roads. Each of the other members of the crew knew how to execute those orders by moving the engine, coupling and uncoupling cars, giving signals, throwing switches, etc., and needed no orders or directions in those mat-

ters, and each member of the crew had his special part to do in the execution of the foreman's orders. Forbes was furnished a list of the cars by the yardmaster, which he consulted in giving his orders as to the placing of the cars, and no car or cars could be placed except by his orders, unless in case of his absence, and then the rear switchman performed his duties as boss. The head switchman's duties were to keep in sight of the engineer when necessary to take signals from the rear switchman or conductor and to repeat them to the engineer, to couple and uncouple cars at or near the engine and to line up switches for the engine. The rear switchman threw the switches down in the field and coupled and uncoupled the cars there and distributed or placed them in accordance with the conductor's orders. The head switchman usually rode the engine or the cars to the next place where he was to couple or uncouple cars, if that was necessary, or could remain at his next place of work if there and the engine was moving to points at which he could have no work until its return. In giving signals to the engineer he could remain any distance away from the engineer if the engineer could see the signals. Either switchman did the work of the other when necessary or convenient. The foregoing facts clearly appear in the record, and it needs no argument to show that in order for the switchmen to protect themselves against the movements of cars night or day, they should be informed in switch yards at all times what is being done; that is, where the cars were to be moved and placed. The last order Forbes gave to those switchmen before Varnholtz was killed was to place all the cars on track 9 back on track 8. They were proceeding to do it in the usual way. Varnholtz had evidently remained on the east side of track 9 where he last coupled the engine to the cars, because he had no work to do until the engine returned on track 8 just about opposite and a few feet west of

him. His next work, as testified by Dunsworth, was to uncouple those cars from the engine on track 8 just west of him when the engine returned there. No one testifies to the contrary, and Dunsworth testified that there was no occasion for his riding the engine down to and beyond switch 8 and back on 8, because he had nothing to do while that movement was being made. Forbes must have known that for he does not contradict Dunsworth in that testimony. He did testify that he last saw Varnholtz alive right where Varnholtz was left by Dunsworth on the east side of track 9. Varnholtz had to cross track 9, and no doubt was crossing it when killed, to reach track 8 opposite him to uncouple the engine from those cars on their return. Varnholtz was not, therefore, shown to be at a place other than his duties required him to be, but was where he might be expected to be in the discharge of his duty, and, therefore, Forbes was clearly shown to be negligent in failing to perform his duty as vice-principal or foreman in informing Varnholtz that the Swift freezer was to be replaced or kicked back on track 9. That negligence was the proximate cause of his death, because his death would not have happened but for that order, and he no doubt would have saved himself if he had known of that order. Forbes knew there was nothing in any signal that he or Dunsworth were giving or could give that would give Varnholtz notice a car was being kicked back on track 9, because the evidence clearly shows that the "back up" signal and the "kick back" signal are one and the same, and that at night it cannot be told by any signal whether cars are being shoved back or kicked back, or on to what track they are being shoved or kicked back. The evidence also shows it was so dark that night that a car could only be seen about a car length when one was looking for it. It is negligence for the conductor and foreman of a switching crew to order a car or cars to be shoved or kicked back onto a track where another employee

is performing his duties when that employee has no reason to expect such a move and has all reason to believe that they are being moved onto another track by order of the foreman. *Adams v. Cleveland, C., C. & St. L. Ry. Co.*, 149 Ill. App. 574, affirmed in 243 Ill. 191.

Second. For the reasons aforesaid Forbes and Varnholtz were not fellow-servants at the time of the giving of the negligent order by Forbes as foreman It was not the signal alone of Forbes that caused Varnholtz' death, but his order as vice-principal and the signal without notice to the deceased. Had Forbes not said a word, but by signal had caused the car to be kicked over track 9, it would have amounted to both an order as foreman and a signal as a fellow-servant, because no other member of that crew had any right or duty by which they could order that car placed when the conductor was on the ground. *Chicago, R. I. & P. Ry. Co. v. Strong*, 228 Ill. 281.

Third. It is clear also that the doctrine of assumed risk has little or no application to this case. Varnholtz did not know and had no means of knowing the danger at the time he was killed, except to look for the car in the dark at a place where he had no reason to expect it to be. While there is some evidence in the record that it was customary to kick back cars in that switch yard of appellant without notice to any one, yet it was not proved that Varnholtz knew of the custom. It was not proved that it was customary for the foreman to violate his duty in informing the crew where the cars were to be placed. Had Varnholtz had that knowledge, kicking the car back would have caused Varnholtz no more danger than shoving or pushing it back with the engine. All the notice he needed was that it was coming back on track 9, and he could have protected himself no matter how it came. The danger to Varnholtz was not one of the ordinary risks of that business. Negligence of the master, or of his

representative, is not one of the ordinary risks of the employment assumed by the employee or servant, until he has knowledge or notice thereof. For the reasons aforesaid and for others so very apparent as to not require argument or statement, the court very properly refused the following instruction:

"That when the deceased entered the employ of the defendant, he assumed all the natural and ordinary risks incident to such service; that he was bound to know that switch engines and cars were running backward and forward over the tracks and switches where he was working, and if you believe from the evidence that the deceased was such switchman and in the service of the defendant, and assumed the risk as above defined, then the plaintiff in this suit is not entitled to recover, and your verdict should find the defendant not guilty."

Fourth. The evidence in the record for the reasons above given is entirely consistent with the contention that the deceased was in the discharge of his duties and in the exercise of reasonable care for his safety when he was killed. There was no eyewitness of his injury or of what he was doing at and just before he was killed. Witnesses testified that he was a competent, sober and a very careful switchman, and that that was his reputation. There is no evidence to the contrary. Ordinary care on the part of the deceased was established by his administrator by the highest proof of which the case is capable, and it was sufficient to support the verdict of the jury on that question. *Collison v. Illinois Cent. R. Co.*, 239 Ill. 532.

The negligent order given by Forbes was an affirmative wrong done by him in violation of a common duty owed by the appellant Railroad Company and Forbes to Varnholtz, and constituted them joint tort feasors, and they were, therefore, jointly liable. *Republic Iron & Steel Co. v. Lee*, 227 Ill. 246.

Appellants also insist that the verdict and judgment are excessive, because the record evidence does

not furnish any proof of the age of the deceased. Under ordinary circumstances we would regard such an oversight as sufficient grounds to reverse any judgment of ten thousand dollars for a death where the earning capacity of the deceased was no more than the proofs in this case disclose. No one testified to the age of Varnholtz, so far as the record shows, but it does show that Mr. Spencer, appellee's attorney, offered in evidence Wigglesworth's tables, using this language:

"I offer in evidence Wigglesworth's tables showing the expectation of life of a man 34 years old. I am offering the part relating only to the age included in the case. It shows that a man of the age of 30 has an expectation of life of 30.24 years. And that a man of 35 years has an expectation of life 28.22, and that the computation is not carried out for the ages between 30 and 35."

The offered evidence was objected to by appellants specifically and solely on the ground that the tables offered were the tables printed in Puterbaugh's Pleading and Practice and were not in any way authenticated to be correct. The objection was overruled by the court and the tables showing precisely what Mr. Spencer said they disclosed were read to the jury. By their own action appellants allowed proof to go to the jury unchallenged in any way that the offered tables showed that Varnholtz had an expectancy of life of more than twenty-eight years when killed, and in no way questioned the truth of Mr. Spencer's statement, in substance, that the deceased was thirty-four years of age at his death. Not a single other reference to the question of Varnholtz's age appears anywhere in the record by the instructions, motion for new trial or otherwise. If this question had at any time been raised by argument to the jury or otherwise before verdict, the learned Court who tried the case would undoubtedly, as he had a right to do, have allowed the evidence, which was by oversight omitted, supplied by

appellee. We do not question that it is the law that where the motion for a new trial is general, as in this case, and does not set out the specific grounds therefor, that an appellant, where not otherwise estopped, may raise any question for review in this court, where no requirement was made that the grounds for the motion be specified, as held in *Ottawa, O. & F. River Val. R. Co. v. McMath,* 91 Ill. 104, and in *Yarber v. Chicago & A. Ry. Co.,* 235 Ill. 589.

Appellants make no question here as to the correctness of the court's ruling in admitting in evidence the life tables in question, and such tables are competent evidence. *Winn v. Cleveland, C., C. & St. L. Ry. Co.,* 239 Ill. 132.

Moreover, it does positively appear from the evidence, that at the time of his death Varnholtz had been married about five years, and left a widow and two young children; that he was a sober man, a competent switchman, had been a switchman for five years, had good hearing, good eyesight and good health; and that he worked steadily earning one hundred dollars to one hundred and twenty-five dollars per month, and gave his earnings to the support of his family. The evidence tended to prove that he was a young, vigorous and industrious man, and that the verdict is not excessive. Had the proof been actually made that the deceased was thirty-four years of age, the only ground for appellant's claim that the verdict is excessive would be removed. The judgment is well supported by the record, and appellants should be estopped to insist that the deceased was not proved to be thirty-four years of age by their failure to make that objection at the time the life tables were offered, or at any time thereafter before verdict.

The judgment is, therefore, affirmed.

*Affirmed.*