Sarah E. Smith, Administratrix, Appellee, v. Kewanee Light & Power Company, Appellant.

Gen. No. 5,682.

1. DEATH—*when evidence of careful habits of deceased admissible.* It is proper to admit evidence of the careful habits of deceased in an action for his death, where he was repairing certain telephone wires which passed above high potential wires of defendant and a witness looking up, on hearing a crackling sound, saw him on a cross-arm of defendant's pole, waving back and forth, and saw him fall and catch on a feed wire, from which he was taken dead, the evidence being conflicting whether it was reasonably necessary under the circumstances to come in contact with the wire or to go on the cross-arm.

2. WITNESSES—*who not qualified as expert.* A witness who has never seen the insulation on wires, the imperfection of which it is alleged caused the death for which action is brought, is not qualified to testify as an expert concerning said insulation.

3. ELECTRICITY—*care required of users.* One using electricity must use care commensurate with the danger.

4. ELECTRICITY—*duty of light company towards workman on wires above.* An instruction ignores the element as to whether defendant owed deceased a duty to insulate its wires at the point where he was killed, and does not accurately state the law where it states that defendant, whose wires were below those of the telephone company which employed deceased, owed deceased a duty

to insulate its wires where he might be called upon to work, whether he was rightfully or wrongfully, reasonably or unreasonably, on the pole of defendant at the place of the accident, or whether defendant knew, or by ordinary care might have known, that deceased, in the line of his duty, might or would get on such pole or come in contact with its wires and whether contact at such point might result injuriously.

Action in case for death by alleged wrongful act. Appeal from the City Court of Kewanee; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed October 15, 1912.

MORSE & DEMERATH, for appellant.

THOMAS J. WELCH, N. F. ANDERSON and JAMES H. ANDREWS, for appellee.

MR. JUSTICE WHITNEY delivered the opinion of the court.

This is an action on the case brought by appellee to recover damages for the benefit of next of kin, occasioned by her intestate losing his life while engaged in working as a lineman for the Home Telephone Company, repairing its line, whose poles and wires ran parallel with, in proximity to, and a few feet above the poles and wires of appellant, in the city of Kewanee.

The declaration alleges negligence, in substance that appellant knew, or by the exercise of ordinary care, might have known the relative location of the wires of the two companies, and that in the necessary repairing of the lines of the telephone company, its employees would have to pass along its wires, suspended from certain straps hanging down therefrom some eighteen inches, and that said employees were, without any negligence on their part, liable to come in contact with the wires of appellant at the intersection of Tremont and Fifth streets; that appellee's intestate, on the 27th day of May, 1908, was necessarily engaged in making repairs on the telephone lines, and was seated suspended in a strap or saddle on the wires of the

telephone company, using all due care for his own safety, and came in contact with appellant's wires, which were not insulated, or were defectively insulated, which the deceased did not know, and all of which appellant knew, or by the exercise of ordinary care might have known, and that appellee's intestate was thereby electrocuted; that appellant's rights to maintain a line in the streets of the city were defined in a certain ordinance, which provided among other things that appellant's lines should be so constructed, and of such a kind and character as to be as safe as could be made by the best known method of construction, and that they were not so constructed and maintained; that appellant's wires were permitted to be without proper or sufficient insulation to protect persons coming in contact with them; and that deceased, while working at his duties, necessarily came in contact with the wires of appellant.

We have stated in substance sufficient of the several counts in the declaration for the purpose of considering this appeal.

Issue was made up, and a trial had, appellant offering no evidence, resulting in a verdict and judgment for appellee of eight thousand dollars, and the case is brought here by appeal.

The evidence shows that after the lines of both companies had been erected (the telephone lines above those of appellant), appellant established several high potential wires about two feet below the telephone wires, and above the other potential wires of appellant. The poles of the two companies were about equidistant apart, near the intersection of said Tremont and Fifth streets, and so located that the posts of appellant came about midway between the poles of the telephone company. The poles of appellant had cross-arms on them to hold up the wires. The accident occurred near or at appellant's pole, standing near the said street intersection. Appellee's intestate was working at his duties as a lineman for the tele-

phone company, passing along a wire called a messenger wire of the telephone company in a saddle or looped strap suspended from the messenger wire. This saddle was a looped strap with a hook at each end, and the lineman at work hooked each end of the strap to the messenger wire, and seating himself in the loop which hung down about eighteen inches moved himself along from time to time as he wished, and as the necessity of his work required. The messenger wire sagged some with the weight of the lineman. When he reached the pole of appellant, near said street intersection, he was about one-half way between the poles of the telephone company, and naturally at the point of the greatest sag of the messenger wire. The weight of the lineman, seated in the saddle, brought him down toward said high potential wires at least eighteen inches, and as much more as his weight caused the messenger wire to sag. It is safe to say that it cannot be determined from the evidence whether or not the lineman, when he reached appellant's pole, had to pass over the high potential wires of appellant. Deceased was seen by the witness Doye standing on one of the cross-arms of appellant's pole. His attention was directed by a crackling like sound, a noise something like a person stepping on a match head, before he saw the deceased. The deceased stood on the cross-arm, facing east, stooping over to the east, with his hands extended, not having hold of anything, waving back and forth. He fell backward, and his climber caught on a feed wire, and he then hung suspended head downward in mid-air, and was soon after taken down dead. Whether he was compelled to get out of his saddle and climb over these high potential wires at said pole by getting onto one of the cross-arms of appellant's pole, is one of the vital points in this case rendering the case a very close one, and one of the very things that might show liability, or the reverse, of appellant. A small spot, at or near the point where deceased was seen standing on the cross-arm,

in the insulation of one of these high potential wires, which usually carried two thousand volts of electricity, was discovered soon after the death of the lineman—a charred spot of about one half inch in diameter. While it is undoubtedly beyond dispute that two thousand volts of electricity would kill, still it is not very clear from the proofs whether electricity escaped from this charred spot and killed the lineman. We can only judge from the circumstances showing that there was a charred spot in the insulation at, or very near, to the place where he was first seen before he fell; and just before he was seen by the witness Doye, witness heard the crackling sound; that he then fell, and was taken dead from the wire where he hung suspended after he fell and caught on that wire. We are of the opinion that he was killed by electricity from appellant's high potential wire. In order for appellee to recover, however, it was necessary for her to show that the location of the messenger wire and other wires of the telephone company, with relation to appellant's wire, was such that it might reasonably be necessary for a lineman of the telephone company to go onto appellant's said pole, or to come in contact with appellant's wires; and that appellant knew, or might by reasonable foresight have known, that contact of an employee with its wires would be likely to result, or might result, fatally, and that the insulation of these high potential wires was imperfect, and had been so long before; that appellant should have known of and remedied their imperfect condition; and that appellee's intestate did in fact come in contact with these high potential wires, where not sufficiently insulated, and thereby suffered death.

The proof is sufficient to justify the jury in believing that death was not caused by electricity from the telephone company's wires. There was evidence offered on general lines of the kind and character of the insulation of appellant's wires, to show that appellant had not constructed its lines and maintained

them according to the provision of the ordinance, under which it was occupying the streets; that is that it was not so constructed and of such a kind and character as to be as safe as could be made by the best known method of construction. We are not satisfied, from the character of the proof offered for that purpose, that it was not properly constructed and maintained. The witnesses offered for that purpose did not, as it appears to us, come up to the proper standard of experts to pass on that question.

The vital question of facts as to this, and the location of each company's wires with reference to each other, and whether a lineman of the telephone company would naturally, or reasonably, have occasion to come in contact with appellant's high potential wires, are supported, if at all, by evidence of a very unsatisfactory character. It is an exceedingly close case on the questions of fact, to say the least, and while we would be loathe to disturb the finding of a jury on questions of fact, where they had been accurately instructed as to the law of the case, we feel they were not as accurately instructed as appellant had a right to expect, and that the judgment ought to be reversed. The court permitted evidence to be offered of the careful habits of deceased. This was proper, if there were no eyewitness to the death. If deceased was electrocuted, it was when the crackling noise was heard before he was seen by the witness Doye.

We are of the opinion that under the circumstances the evidence was properly admitted as tending to show the exercise of due care on the part of deceased.

The witness Shields, who had not seen the insulation upon appellants wire at the place in question, was permitted to testify for appellee as an expert concerning said insulation, and to state its imperfections and what would have been a proper insulation. This was admitted over repeated objections that the witness had not qualified to testify as an expert. We are of opinion that it was not shown that Shields was quali-

fied to testify as an expert, and that these objections should have been sustained.

The first instruction given for appellee was as follows:

"You are instructed that the defendant owed the duty to the plaintiff's son, to insulate its high tension wires, if the preponderance of the evidence shows the said defendant's wires were high tension wires, at such places as said plaintiff's son might be called upon to work, if he, exercising ordinary care for his own safety, might come in contact with such wires in the discharge of his duties, and that the defendant was bound to exercise ordinary care in the making of such insulation; and ordinary care is such care as is commensurate with the dangers of such high tension wires, if any, and such care as an ordinarily cautious person would exercise in like circumstances if his own matters and concerns were under consideration; and in this case, if you find from the preponderance of the evidence, that the defendant failed to exercise such care and caution for the safety of the plaintiff's son, then the defendant has been shown to have been negligent in the matter of the insulation of its high tension wires, and in passing on this question, it is your duty to so find."

The law is that a person using electricity is bound to use such care as is commensurate with the danger. This instruction, in effect, told the jury that, at such places as plaintiff's son might be called upon to work, the defendant owed him the duty to insulate its wires, whether or not deceased was rightfully or wrongfully, reasonably or unreasonably on appellant's pole at the place in question, or whether or not appellant knew, or by the exercise of ordinary care might have known, that deceased, in the line of his duty, might, or would get on its pole, or come in contact with its wires at that point, and whether or not contact with its wires at that point might result injuriously.

The deceased might have been using due care for his own safety in the discharge of his duties at a place where appellant owed him no duty, and if it owed

him no duty, it was not negligent. Whether or not appellant owed him a duty to insulate its wires at the place where he was killed, was one of the questions necessarily involved in the trial and the instruction ignores that element. The instruction does not accurately state the law, and as we have above stated, in that regard this case is a close one on the vital question of fact involved, and, therefore, one in which appellant was entitled to have the jury accurately instructed.

For this and other errors above stated, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*