## Sarah E. Smith, Administratrix, Appellee, v. Kewanee Light & Power Company, Appellant.

## Gen. No. 5,966.

1. TRIAL, § 187*—*when motion to direct verdict waived.* A motion made by defendant at the close of plaintiff's evidence in chief to direct a verdict is waived by his subsequently introducing evidence.

2. PLEADING, § 421*—*when variance waived.* A motion by defendant at the close of plaintiff's evidence in chief raising questions of variance is waived by defendant introducing evidence thereafter without further suggesting variance.

3. TRAIL, § 217*—*what effect of motion to direct verdict after close of all evidence.* A motion to direct a verdict made by defendant after the close of all the evidence raises the question whether there was any evidence legally tending to sustain the verdict.

4. TRIAL, § 195*—*when motion to direct verdict properly denied.* If there is evidence introduced which fairly tends to make a case for plaintiff, defendant's motion to direct a verdict made at the close of plaintiff's evidence in chief is properly denied without regard to the court's opinion as to where the preponderance of the evidence is.

5. TRIAL, § 861*—*when motion to direct verdict at close of evidence proper.* If there is material variance between all the proof and each count of the declaration, such variance may be presented under a motion to direct a verdict at the close of all the evidence.

6. PLEADING, § 423*—*when variance not material.* A variance which consists in the simple mistake of using the word "west" instead of "east" in two counts of the declaration in stating in which direction defendant's wires ran and which was not suggested in the trial court is not material.

7. PLEADING, § 431*—*when variance question for jury.* Where there is evidence tending to sustain the charges in the declaration, the court cannot hold that there is a variance based on the evidence of one witness alone, but the question is one for the jury.

8. APPEAL AND ERROR, § 1411*—*when finding on conflicting evidence not ground for reversal.* Finding of the jury on conflicting evidence will not be disturbed on appeal where there is sufficient evidence to warrant such finding.

9. APPEAL AND ERROR, § 1466*—*when ruling upon admission of testimony not ground for reversal.* Evidence in an action to recover for the death of a person killed by coming in contact with electricity from defendant's wire, examined and *held* that the ruling of the court upon its admission did not constitute reversible error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Smith v. Kewanee Light & Power Co., 196 Ill. App. 118.

10. Appeal and Error, § 1533*—*when instruction not ground for reversal.* In an action to recover for the death of plaintiff's intestate by coming in contact with an electric wire, an instruction as to the duty of plaintiff proving "her case" and referring to "the evidence bearing on the plaintiff's case" is not objectionable for failing to tell the jury what plaintiff's case is.

11. Appeal and Error, § 1533*—*when instruction not ground for reversal.* Error in giving an instruction referring to plaintiff's "case" is not ground for reversal where like language was contained in an instruction given at the request of defendant.

12. Appeal and Error, § 1523*—*when instruction not ground for reversal.* In an action to recover for the death of plaintiff's intestate by coming in contact with an electric wire, instructions examined and *held* not ground for reversal.

13. Instructions, § 131*—*when refusal to give proper.* Instructions which ignore an element of the case are properly refused.

14. Instructions, § 151*—*when refusal to give instruction on matters already covered proper.* Refusal to give instruction on questions which are sufficiently covered by other instructions is not ground for reversal.

15. Instructions, § 18*—*when refusal of misleading instructions proper.* Refusal to give an instruction is not improper where the requested instruction is calculated to mislead the jury.

16. Instructions, § 71*—*when refusal of instruction incorrectly stating law proper.* In an action to recover for the death of plaintiff's intestate caused by coming in contact with an electric wire, an instruction which placed upon the deceased a higher degree of care than the law imposed upon him, and ignored the duty of defendant owed to one in his position and performing his duty on the wire upon which, at the particular place, deceased had never been before, is properly refused.

17. Instructions, § 164*—*when second reading of instruction not ground for reversal.* The action of the court in having an instruction brought back to the court room at the request of plaintiff and in the presence of defendant's counsel, and in changing a word therein and reading the instruction again to the jury, is not ground for reversal.

Appeal from the City Court of Kewanee county; the Hon. H. Sterling Pomeroy, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed October 20, 1915. *Certiorari* denied by Supreme Court (making opinion final).

Robert C. Morse and Sturtz & Ewan, for appellant.

Thomas J. Welch and James H. Andrews, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Raymond E. Smith, a lineman for the Home Telephone Company of Kewanee, was killed by coming in contact with a high potential current of electricity from a wire of the Kewanee Light & Power Company. His administratrix brought this suit against said company to recover for the loss to the next of kin by his death. A judgment for plaintiff was reversed by us in *Smith v. Kewanee Light & Power Co.*, 175 Ill. App. 354, to which we refer for a general statement of the facts. Upon another trial plaintiff had a verdict and judgment for $7,750, from which defendant below appeals. We refused to consider certain errors assigned because they were not duly presented by the record. Thereafter appellant caused the record to be amended in those particulars, and we granted a rehearing that they might be considered.

The main contentions of appellant are that the preponderance of the evidence does not support the verdict and that there are material variances between the proof and each count of the declaration. At the close of appellee's evidence in chief defendant made motions raising questions of variance, and made a motion to direct a verdict. These were denied and appellant thereupon introduced evidence. The motion made then to direct a verdict was waived by the appellant by the subsequent introduction of evidence. *Reavely v. Harris*, 239 Ill. 526. At the close of all the evidence appellant again moved to direct a verdict for appellant but did not state the grounds for the motion and did not raise any question of variance between the evidence and the declaration. We are of the opinion that the questions of variance raised at the close of appellee's case were also waived by the introduction by appellant of further proof, for the appellee then became entitled to the benefit of all evidence thereafter

introduced by appellant and by appellee in rebuttal, and after that additional proof had been introduced appellant did not again suggest a variance between the proof and the declaration. The motion to direct a verdict, made by appellant at the close of all the evidence, raised the legal question whether there was any evidence legally tending to sustain the verdict. *Pate v. Gus Blair-Big Muddy Coal Co.*, 252 Ill. 198. If there was evidence introduced which fairly tended to make a case for appellee, then the motion to direct a verdict was properly denied, regardless of what the opinion of the court might be as to where the preponderance of the evidence was. *Libby, McNeil & Libby v. Cook*, 222 Ill. 206; *Wilkinson v. Aetna Life Ins. Co.*, 240 Ill. 205; *Adams v. Cleveland, C., C. & St. L. Ry. Co.*, 243 Ill. 191. If there were material variances between all the proof and each count of the declaration, then there would be an entire absence of proof material to sustain the verdict, and such variances could be presented under a motion to direct a verdict at the close of all the evidence, because there would be no proof fairly tending to make appellee's case. *Chicago Union Traction Co. v. Brethauer*, 223 Ill. 521. We shall therefore consider the supposed variances.

The lines of the telephone company ran north and south along the east side of Tremont street across Fifth street and other streets. Certain high potential wires of appellant came from the east to a certain cross-arm on a pole of appellant on Tremont street at Fifth street, and certain high potential wires of appellant came from the south to another cross-arm on the same pole, directly beneath the one first mentioned, and each of these wires were there cut off, and each wire from the south was tied to a wire from the east on the cross-arm above it, thus forming a continuous line. Two of the four counts of the declaration charged that these high potential wires came from the south and at Fifth street turned to the west,

instead of saying, as the fact was, that they turned to the east. It is claimed that this is a fatal variance. It is obvious that it was a simple mistake in using the word "west" instead of "east" in said two counts of the declaration. Our attention is not called to any place in the record where this variance was suggested in the court below, where an amendment could have been made. Appellant knew the location and direction of its own wires and was not misled. Much more serious variances were disregarded in *City of Joliet v. Johnson*, 71 Ill. App. 423, and 177 Ill. 178. The material thing in that respect was the charge that the telephone wire upon which deceased was at work was directly over appellant's high potential wires on said pole at the time he was killed, and it made no difference as to appellant's liability for his death whether it then turned east or west. This variance was not material, and it was not presented in the trial court.

To understand the other alleged variances it is necessary further to describe the situation. The telephone company had a messenger wire extending north and south on the east side of Tremont street and underneath it a cable, which cable when first put up was only temporarily attached to the messenger wire. On the morning in question deceased was traveling along said messenger wire, seated underneath that wire in a saddle, which consisted of a wide strap with a hook at each end, each fastened over the messenger wire. Deceased seated himself in this loop and pulled himself along, from the south to the north as he desired, and as he went along he permanently fastened the cable to the messenger wire behind him, by the aid of appliances which he carried. It is the claim of appellee in her declaration that at the point where this messenger wire came to the vicinity of appellant's pole at the corner of Tremont and Fifth streets, the messenger wire was directly above these high potential wires and that the weight of deceased, about 145

pounds, and of his saddle and of the appliances which he carried, caused the messenger wire to sag so that when he reached this cross-arm of appellant it became reasonably necessary for him to get upon said cross-arm in getting over and beyond this obstacle, and that he thereby came in contact with these high potential wires, insufficiently insulated, and was killed by the electric current thereon. When this telephone messenger wire was installed there were underneath it three high potential wires in the same situation as those now involved, but they were not the same wires and were only used to carry a high potential current in the nighttime for certain arc lights. The work of a lineman like deceased, traveling along this messenger wire as was frequently done, was not rendered dangerous in the daytime by the presence of those three wires underneath it, because they were used only in the nighttime. After the telephone messenger wire had been erected, appellant removed those three arc light wires and put in their place the present wires to carry a high potential current in the daytime to supply power to a certain factory. This created a dangerous condition for a lineman, if he should come in contact with said wires of appellant when working in the daytime. Deceased had never been along this messenger wire or over this cross-arm until this morning. These wires of appellant were in the street under a certain ordinance of the city, section 3 of which was as follows:

"The plant and appliances for furnishing such electric lights or motive power, shall be so constructed as not to constitute a nuisance or unreasonable annoyance to the inhabitants of this city; or to interfere with the free use of the public streets or alleys of this city; and the whole system and appliances or apparatus thereof shall be so constructed and be of such kind and character as to be safe as can be made by the best known method of construction, and that all poles and

cross-arms shall be so set and painted as to present a neat and workmanlike appearance.''

Probably in attempted compliance with this provision, appellant had insulation on these wires. Each of the three wires from the east were wound around a glass insulator on top of a peg on the cross-arm, and the wires were then cut off, leaving the ends exposed, and the same was true of the wires from the south, tied to the cross-arm next underneath the top cross-arm, and we infer from the evidence that the connecting wires between these two arms were not insulated. It is the claim of appellee in her declaration that this insulation was insufficient to protect a human being who came in contact with it, and that deceased, in the proper discharge of his duty, got upon one of these cross-arms in an effort to get over and beyond these high potential wires, because the sag caused by his weight on the messenger wire brought him so far down that it was necessary for him to get upon the cross-arm in order to get over. Appellant claims that the proof is that this messenger wire was entirely west of the west end of said cross-arm, so that deceased had no occasion to be upon it, and that appellant's wires were properly and sufficiently insulated, and that deceased, for some purpose of his own, got upon the cross-arm and went down appellant's pole to the ground, and came up again, and was upon the cross-arm for the purpose of getting back into his saddle, when he received the charge of electricity which killed him; and that his business as a lineman did not call him there; and that he was either a trespasser or a mere licensee, to whom appellant owed no duty; and that it therefore made no difference whether it had sufficient or any insulation, as it owed him no duty to protect him. The claim of appellant that deceased went down the pole and back again rests upon the evidence of one Doy that he saw deceased on the cross-arm just before he fell, which evidently was just after

he had received the fatal charge of electricity. He testified in chief that some ten 'minutes before that he was looking out from a blacksmith shop some distance away and saw deceased about four feet from the ground going up this pole. He was afterwards recalled and testified that deceased was an entire stranger to him and he did not know that it was deceased whom he saw going up the pole, nor did he notice how the man was dressed whom he saw going up the pole. It is evident that it was a mere inference on his part that the man whom he saw on the pole near the ground was the man whom he afterwards saw in the act of falling from the cross-arm. We are not prepared to hold that if deceased did descend to the ground, and came back again, he was beyond the protection of this ordinance. But the jury were not required to believe that it was deceased whom Doy saw four feet above the ground. There were circumstances in evidence from which the jury might conclude that deceased was engaged in getting over the obstacle of this cross-arm and had unhooked one end of his saddle to enable him to get upon and over the cross-arm. There was a burnt place on the insulation of one of these wires indicating the probable place where deceased came in contact therewith. Because of that evidence tending to sustain the charges in the declaration, the court could not hold that there was a variance based on the evidence of Doy alone, but was required to leave that question to the jury, as was done in several instructions given at the request of appellant. There was evidence fairly tending to show that this messenger wire was directly above these high potential wires, and passed directly over this west cross-arm, and that the insulation on appellant's wires was for protection against the weather, and was not sufficient to protect a person who, in the discharge of his duty, had occasion to be where he might come in contact with it. The evidence justified the conclusion that this insulation was

only intended to protect the wires from the weather, and was not at all fitted to protect a person who might have occasion to take hold of the wire, and that it was not such insulation as the ordinance called for. Appellant had evidence that this messenger wire was entirely west of the cross-arm, and not over it, and not above its wires, and that its insulation was sufficient. What appellant really means by its argument on this subject is that its evidence on those subjects was much more credible than that produced by appellee, and that we should decide that the great preponderance of the evidence favors appellant on these questions, and that because thereof the judgment should be reversed. We are satisfied that there is evidence fairly tending to make a case for plaintiff under at least three counts of the declaration. Two juries found the issues for appellee, and the trial judge has twice approved such a verdict, and while the evidence is conflicting we do not find its condition such as to warrant us in again disturbing that conclusion.

It is contended that the court erred in various rulings upon the admission of testimony. We have considered these questions and think those errors are not well assigned. Witnesses who had had considerable experience in work of this kind were permitted to give their opinions on various questions, both as to the sufficiency of the insulation for the protection of human beings and as to the distance which a messenger wire like this would sag nearly half way between the telephone poles, with such a weight as was placed upon it by deceased and his appliances. We conclude that they were, at this trial, shown to be sufficiently qualified to permit them to answer these questions. We do not hold that all the rulings on this subject were absolutely correct, but that they were sufficiently correct and that no reversible error is contained in them.

Complaint is made of instructions given at the request of appellee and of the refusal of instructions

requested by appellant. Instruction No. 4 spoke of the duty of appellee to prove "her case" and of "the evidence bearing on the plaintiff's case," without telling the jury what the plaintiff's case was. The same criticisms here presented were discussed in *Chicago City Ry. Co. v. Nelson,* 215 Ill. 436, where a like instruction was sustained. Like instructions were approved in *Donley v. Dougherty,* 174 Ill. 582; *Taylor v. Felsing,* 164 Ill. 331; *Chicago Consolidated Traction Co. v. Schritter,* 222 Ill. 364; *Pierson v. Lyon & Healy,* 243 Ill. 370; and by this court in *Devine v. Ryan,* 115 Ill. App. 498, and *Hammond v. Woodruff & Edwards Co.,* 168 Ill. App. 368. Moreover, instruction No. 1, given at the request of appellant, contains a like reference to plaintiff's case and, if there was any error in such a reference, appellant is thereby estopped to complain of it. Instruction No. 3 for plaintiff was approved in substance in *Commonwealth Elec. Co. v. Rose,* 214 Ill. 545. Instruction No. 7 was on the subject of the measure of damages if the jury found for appellee. It is objected that it is not limited to the negligence charged in the declaration and that it does not confine the jury to the evidence. The instruction properly made no reference to the subject of negligence. It was applicable only in case the jury had already found for the plaintiff and had found defendant negligent. It did confine the jury to the evidence. The evidence is twice referred to in the instruction. Complaint is made of instruction No. 18 given for appellee. It is discussed at length and approved in *Baltimore & O. S. W. Ry. Co. v. Then,* 159 Ill. 535, and is approved in *U. S. Brewing Co. v. Stoltenberg,* 211 Ill. 531, and in these two cases many other cases are cited in support thereof. Defendant's instruction No. 2 refused, ignored the question of safety, and ignored the duty imposed upon appellant by the ordinance, and ignored the change which appellant had made in the use of its high potential wires in the daytime after the

telephone wires had been installed. Appellant's re-
fused instruction No. 5 ignored its duty under the
ordinance, and did not require the best known method
of construction, which the ordinance required of it.
Moreover, instructions Nos. 9, 15 and 16, given at the
request of appellant, fully covered the point. Appel-
lant's refused instructions Nos. 6, 9 and 10 were
sufficiently covered by given instructions. Appellant's
refused instruction No. 7 was calculated to mislead the
jury. Appellant's refused instruction No. 8 was as to
death caused by mere accident, but everything possible
by which this death could be attributed to mere
accident so as to excuse appellant was covered by
instructions given at appellant's request. Appellant's
refused instruction No. 10 was covered by its given
instructions Nos. 13 and 14, and its refused instruction
No. 11 was covered by its given instruction No. 13.
Appellant's refused instruction Nos. 7, 8, 10 and 11
were not in every respect correct. They placed upon
deceased a higher degree of care than the law imposed
upon him, and ignored the duty appellant owed to one
in his position and performing his duty on the tele-
phone wires, upon which particular wires at that
particular place the deceased had never been before
that day.

Appellee's instruction No. 18, as given to the jury
a few minutes before the dinner hour, contained the
word "died." It was an exact reproduction of an
instruction which had been approved by the Supreme
Court in *U. S. Brewing Co. v. Stoltenberg, supra,* ex-
cept that the latter contained the word "killed" instead
of the word "died." When the jury returned to the
jury room after dinner, the court, at the request of
appellee's counsel, had the instruction brought back to
the court room in the presence of appellant's counsel,
and changed the word "died" to "killed" and again
read said instruction to the jury, over the objection of
appellant. It is not contended that the instruction is

erroneous, and we approve the court's proceeding. Probably the amendment was not necessary, but it was a proper precaution, properly exercised, and we fail to see that appellant could be harmed by a second reading of a correct instruction. We find no reversible error in the record and the judgment is affirmed.

*Affirmed.*