Arthur F. Gourley, Appellant, v. Chicago & Eastern Illinois Railway Company, Appellee.

Gen. No. 39,098.

Opinion filed May 3, 1938.   Rehearing denied May 17, 1938.

Ryan, Sinnott & Miller, of Chicago, for appellant.

Edward W. Rawlins, of Chicago, and Craig Van Meter, for appellee; K. L. Richmond, of Chicago, of counsel.

Mr. Presiding Justice Friend delivered the opinion of the court.

Arthur F. Gourley, plaintiff, brought suit to recover damages for personal injuries sustained in a collision between two railroad trains at Marion, Illinois.   After the jury had returned a verdict in his favor for $80,000, the court rendered judgment in favor of the defendant, *non obstante veredicto,* from which plaintiff appeals.

The amended complaint, as subsequently amended, consisting of one count, alleges in substance that on and prior to August 3, 1933, the Chicago & Eastern Illinois Railway Company, defendant, was engaged in interstate transportation as a common carrier, and was on August 3, 1933, operating a train in a northerly direction at or near a grade crossing of the Illinois Central Railroad in Marion, Williamson county, Illinois; that the Illinois Central Railroad was also a common carrier engaged in interstate commerce; that plaintiff was working for the latter company as an engineer and was operating a locomotive which was hauling a train in an easterly direction toward the grade crossing at Marion, and that plaintiff was not under the provisions of the Workmen's Compensation Act; that there was in force at the time of the accident a statute which provides that all trains, when approaching a grade crossing with another railroad, shall be brought to a stop before reaching the same and within 800 feet therefrom, and shall not proceed until the engineer "shall positively ascertain that the way is clear and that the train can safely resume its course." (Ch. 114, par. 91, sec. 12, p. 2246, Cahill's Ill. St. 1933.) It is averred that there were certain buildings, tanks and structures near the southwest corner of the intersection of the two railroads which restricted the view of the operators of the locomotives on both lines; that there was a stop sign on the C. & E. I. track, 220 feet south of the crossing, and a similar sign on the I. C. track, 310 feet west of the crossing; that there was a long established uniform custom and practice on each railroad for the engines approaching this crossing to stop at their respective stop boards or stop signs and to whistle before proceeding, and that the engine which first arrived at the sign, and stopped and whistled, was conceded the right of way over the crossing; that plaintiff knew of this cus-

tom and relied thereon; that he brought his train to a stop at the customary place, gave the customary whistle signal and used reasonable care to ascertain that the way was clear before proceeding; that plaintiff's train had started away from the stop sign before defendant's train arrived at its customary stopping place; and that at the time plaintiff started his train the way was clear and the train could and would have proceeded safely over the crossing except for the failure of defendant to comply with the custom and statute. It is averred that plaintiff was in the exercise of ordinary care but that defendant was guilty of negligence, generally and specifically, in that it operated its locomotive toward the grade crossing at a high rate of speed where the view was restricted, that it failed to keep a reasonably careful lookout ahead and in the direction in which the locomotive was moving, that it failed to bring defendant's train to a stop before passing the stop board or before reaching the grade crossing, and was also negligent in failing to bring the train to a stop before reaching the crossing and within 800 feet therefrom, in violation of the statute and of the practice and custom.

Defendant moved to dismiss the amended complaint, as amended, setting forth the following four specific reasons in support of the motion: (1) that the complaint shows no actionable negligence and alleges no breach of any legal duty owed by defendant to plaintiff; (2) that the complaint shows on its face that plaintiff has no cause of action, because par. 91, ch. 114 of the statutes set forth in the complaint makes it the personal duty of plaintiff, after bringing his train to a stop, to positively ascertain that the way was clear and that it could safely resume its course, and there being no allegations that plaintiff did so ascertain and the facts alleged show that the way was not clear, and that the train could not safely resume its course;

(3) that the allegations relative to the custom of the trains to stop at their respective stop boards and whistle, and the custom of conceding the right of way to the train that first started from the stop board, set up a practice and custom in violation of the duty imposed upon plaintiff by par. 91, ch. 114 of the statute, and therefore these allegations should be stricken; and (4) that the paragraphs of the complaint which allege a violation of the practice and custom referred to are in contravention of the duty imposed on plaintiff by par. 91, ch. 114 of the statute, and therefore should be stricken.

The motion to strike was overruled and defendant filed its answer, wherein it admits that defendant was operating various lines of steam railroad, but denies that at the time of the accident it was engaged in interstate transportation; admits that it was operating its train in a northerly direction near the grade crossing at Marion, admits that the Illinois Central Railroad Company was a common carrier and that plaintiff was employed by it as an engineer, but denies that either the company or plaintiff was engaged in interstate transportation at the time, and that plaintiff was not subject to the Illinois Workmen's Compensation Act, admits the allegations relative to the obstructions to view as the grade crossing was approached, and that par. 91, ch. 114 of the statute was in force at the time of the accident; admits the existence of the two stop boards, but denies the alleged custom and practice of coming to a stop at the boards, whistling and proceeding, and the custom and practice of conceding the right of way over the crossing to the train which first left the stop board, and avers that such practice and custom, if in fact they existed, were void because they were in violation of the statute referred to. The answer denies that plaintiff stopped his train and whistled, avers that plaintiff did not

ascertain that the way was clear and that he could safely proceed, denies that plaintiff's train had started up from the stop board before defendant's train reached its stop board, and that plaintiff's train could have proceeded in safety, had defendant not failed to observe the alleged practice and custom, and denies that there was any practice and custom, as alleged. The answer also denies that plaintiff was in the exercise of ordinary care, as alleged, and denies each of the specific acts of negligence charged in the amended complaint.

During the trial plaintiff sought leave to file an additional count, charging wilful and wanton conduct, which was denied. After the jury returned its verdict defendant made its motion to enter judgment in its favor, notwithstanding the verdict. This motion, in addition to general grounds, was based on the theory that the court should have directed a verdict for the defendant as a matter of law, because of the alleged violation of the statute mentioned, and it was evidently upon this ground that the motion was granted and judgment against plaintiff was rendered by the court.

Plaintiff's suit arises out of a right angle collision occurring between two railroad trains at a grade crossing in the city of Marion, Illinois. At the time of the accident plaintiff had had 38 years of railroad experience, 32 years of which were spent as an engineer on the Illinois Central Railroad. For approximately six years he had been assigned to this particular run. The accident occurred at 8:05 a. m. At the time of the accident he was operating a locomotive, hauling twenty-five freight and two passenger cars in an easterly direction between Carbondale, Illinois, and Paducah, Kentucky, over the right of way of the Illinois Central. The usual time of that train for arriving at the crossing in question was 7:12 a. m., but it had

been delayed because of the unusually heavy load. Plaintiff says that he brought his train to a stop at the stop board along the right of way, which is about 15 or 20 feet west of Court street, a hard surface State highway running through Marion, whistled twice as a signal that he was going to proceed over the crossing, and started up slowly. The single track railroad operated by defendant extends in a northerly and southerly direction through Marion, and crosses the I. C. track practically at right angles. A stop board was also located along this track, 221 feet from the crossing. There was no tower, watchman or automatic signal in operation to regulate traffic over the crossing of these two railroads. View from the I. C. track of the C. & E. I. track south of the crossing was obscured by a number of buildings and tanks, located in the southwest quadrant of the intersection, and similarly the view to the west of the train crews on the north bound C. & E. I. trains was so obscured. These obstructions consisted of a building 25 feet in width, 90 feet east and about 64 feet south of the stop board on the Illinois Central, and two upright and then two horizontal oil tanks, with narrow spaces between them, just east of this building. The last of these tanks is located 90 feet west of the C. & E. I. track, and for all practical purposes the buildings, tanks and trees totally obstruct any vision to the south, or right, until the observer reaches a point 90 feet from the crossing. At a point 250 feet south of the crossing, which is approximately at the stop board along the C. & E. I., the view of the I. C. track to the west of the crossing is limited to practically the east end of the oil tank, which is 90 feet from the C. & E. I. track, and anything to the west of there would have been invisible to the crew of the C. & E. I. train.

While plaintiff was proceeding eastward, a north bound train on the C. & E. I., consisting of an engine

and two passenger coaches, pulled into the station at Marion, approximately 1100 feet south of the crossing, where it stopped for 30 or 40 seconds, and then proceeded north. This train was being operated by an engineer and fireman. Plaintiff's counsel refer to them as "emergency men," and contend that the train which they were operating was driven up to the crossing blindly, without any lookout whatever being kept for trains approaching from the west. Hatfield, the fireman, had been in the employ of the C. & E. I. for 26 years, and although that was the first trip he had made for some time with the engineer, Deffenbaugh, he had made a trip on that particular run a day or two before, and on the night preceding he and the engineer had passed south along this track. He had also made two trips over the track in question about a week before, and understood the situation at this crossing. Deffenbaugh, the engineer, had been in the employ of the C. & E. I. as an engineer for 29 years. It appears from the evidence that the fireman, who was on the left or west side of the train was the only member of the engine crew who could have seen the approaching train. He made an observation when the engine was about 35 feet past the stop sign, reported, "all clear on my side, nobody in sight," and got down from his seat and commenced to shovel coal into the firebox. He did not see the approaching train until the collision. The engineer claimed that he did not know the fireman's view was so obstructed that he could not see more than 80 or 90 feet up the I. C. track to the west at the time he made his observation, and he himself could not see to the west of the crossing from his seat as engineer, because he was on the east or right side of the cab, and his view was obstructed by the boiler. The engineer likewise did not see plaintiff's train before the crash.

Plaintiff testified that as he approached the crossing after observing that there was no train between the stop board and the crossing, he looked forward momentarily and then looked south again, at which time he first saw defendant's engine about 10 or 20 feet north of the stop sign. He estimated that, at the time he first saw defendant's engine, the cab of his engine was about 60 to 75 feet from the crossing; his position in the cab was about 35 feet from the pilot, which would have placed the front of his engine about 25 to 40 feet from the crossing. He immediately shut off his throttle, applied the emergency brakes and caused the train to slow down. Plaintiff's engine, which according to the evidence weighed approximately 140 tons, was struck on the right side at the cylinder head, about 10 feet back of the pilot, with such violence that it was derailed and thrown from the track to the north, a distance of from 15 to 18 feet. The right cylinder was caved in. The defendant's engine was also derailed. The axle on one of the front trucks was broken, one wheel was lying on the ground, the engine truck was demolished, and the crossing was torn up. Plaintiff's fireman jumped from the tender before the collision. When plaintiff saw the collision was imminent he attempted to get off his engine at the handrail on the left side of the cab, but before he could descend the engine was struck and buckled around, so that plaintiff's hands or arms were caught between the engine and the tender, and he could not be extricated for over an hour and until the train crew procured an acetylene torch and burned through the draw bar to release him. Both his hands were crushed; his left arm was amputated about five inches above the wrist, and his right hand was operated on in a hospital at Paducah, Ky., so that part of the palm and almost all of the knuckles were removed, leaving only his thumb and little finger. He

remained in the hospital for many weeks, the wounds became infected, and at the time of the trial, which was over 2½ years after the accident, his wound had not completely healed.

Under the provisions of the Civil Practice Act, the two following issues are presented in the case: (1) whether or not the judgment notwithstanding the verdict is correct, and should be affirmed; and (2) in the event that we should hold that the trial court erred in entering judgment in favor of defendant notwithstanding the verdict, whether or not there was error in the record which would have entitled the defendant to a new trial had judgment not been entered in its favor by the trial court.

As to the first question, it is defendant's theory of the case that the duty imposed upon plaintiff by the statute of bringing his train to a stop within 800 feet of the crossing, and not to proceed until he ''shall positively ascertain that the way is clear and the train can safely resume its course,'' was positive and mandatory; that the provisions of the statute cannot be changed or abrogated by a practice or custom; that plaintiff was guilty of negligence in that he violated the statute by failing positively to ascertain, as he was required to do, that the way was clear and that he could safely proceed before going upon the crossing; and that his negligence in this regard proximately contributed to cause the injuries complained of, so as to preclude a recovery. It is argued that a statute commanding an act to be done creates an absolute duty to perform such act, and a violation of the statute resulting in injury constitutes negligence *per se*. Considerable space is devoted by counsel on both sides to the citation of authorities and argument relating to the question whether violation of a statute constitutes negligence *per se*. It would be impossible within the space limitations of this opinion to review all these

cases, but from a careful reading and examination of the authorities we are satisfied that, under the rule enunciated in recent decisions in this State, violation of a law at the time of an accident merely constitutes · evidence of negligence; there always remains the question of fact to be determined by the court or jury whether the illegal act is the proximate cause of the injury; the mere fact, if it be a fact, that a party has violated the law at the time he was injured will not bar his recovery unless the unlawful act in some way proximately contributed to the accident in which he was injured. It was so held in *Jeneary v. Chicago & Interurban Traction Co.,* 306 Ill. 392, 395. In that case an action was brought by the foreman of a switching crew of a steam railroad company against an electric railway company to recover damages for injuries sustained in a right angle collision between trains operated by the two companies. Jeneary, the plaintiff, was riding on the front end of the first car, and was directing the operation of the train. As the train approached the grade crossing he looked north and south, but did not stop his train. The contention was made by defendant that Jeneary could not recover because of his failure to comply with the very statute in question in this proceeding, in that he "did not cause his train to stop within 800 feet of the crossing," etc., but the court held that there was evidence in the record which would have justified the jury in finding that the failure to stop was not the proximate cause of the accident and that the question was therefore properly submitted to the jury, citing *Schlauder v. Chicago & Southern Traction Co.,* 253 Ill. 154.

In *Lerette v. Director General,* 306 Ill. 348, a suit was brought to recover for injuries sustained when plaintiff attempted to crawl between the cars of a train which was blocking the public highway. In so doing he had violated the statute. The defendant had

also violated the statute by blocking the crossing for more than 10 minutes and by starting its train without ringing a bell. The contention was made that plaintiff's violation of the statute constituted negligence *per se,* but the court said (pp. 352, 353): "The mere fact that plaintiff was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. (*Star Brewery Co. v. Hauck,* 222 Ill. 348; *Graham v. Hagmann,* 270 Ill. 252; *Ensley Mercantile Co. v. Otwell,* 142 Ala. 575; *Munroe v. Hartford Street Railway Co.,* 76 Conn. 201.) In determining whether the unlawful conduct of plaintiff will bar his right to recover there must be kept in mind the distinction between that which directly and proximately produces or helps to produce the result as an efficient cause and that which is a necessary condition or attendant circumstance of it. If the illegal act is a mere condition which made it possible for the accident to occur but is in itself no part of the accident it will not bar recovery."

In the recent case of *Streeter v. Humrichouse,* 357 Ill. 234, decedent was injured by an automobile while he was riding on the footboard of an engine in violation of a rule of the railroad company, his employer. In discussing the question under consideration, and after citing and quoting from various decisions, the court said (p. 244): "In the case before us McGann's breach of the rule by riding on the foot-board at the end of the tender did nothing more than furnish a condition which made the injury he received possible. It did not directly and proximately produce or help to produce the result as an efficient cause of the collision and consequent injury."

Plaintiff cites the following cases: *Price v. Illinois Bell Tel. Co.,* 259 Ill. App. 581; *United States Brewing Co. v. Stoltenberg,* 211 Ill. 531; *Commonwealth Elec-*

*tric Co. v. Rose,* 214 Ill. 545; *Kenyon v. Chicago C. Ry. Co.,* 235 Ill. 406; *Hoobler v. Voelpel,* 246 Ill. App. 69. From these and many others cited we take it to be the established rule in this State that violation of a statute is not negligence *per se,* but a question of fact for the jury.

The principal authority relied on by defendant is *Frese v. Chicago, B. & Q. R. Co.,* 290 Mo. 501; 263 U. S. 1. That cause went to the United States Supreme Court by certiorari to the Supreme Court of Missouri, which had decided against plaintiff, and was an action founded upon the Federal Employers' Liability Act. Recovery was denied because of the provisions of the Illinois statute in question. The court pointed out that the statute makes it the personal duty of the engineer positively to ascertain that the train can safely resume its course, and said that whatever may have been the practice, he could not escape his duty, and that "it would be a perversion of the Employers' Liability act (. . .) to hold that he could recover for an injury primarily due to his failure to act as required, on the ground that possibly the injury might have been prevented if his subordinate had done more." In the *Frese* case the Missouri court held that the custom relied on by plaintiff was not alleged in the pleadings, and that the evidence did not tend to show that the defendant had notice of the existence of the custom; also that the custom relied on was nothing more than a private arrangement between the fireman and the deceased engineer upon the particular engine involved. Moreover, it appears to be the rule in this State that in the construction of a statute, the final authority is the Supreme Court of Illinois, unless a federal question is raised, and none is involved in the case at bar. In *Rothschild & Co. v. Steger & Sons Piano Mfg. Co.,* 256 Ill. 196, the court, in discussing the law to be invoked in the

construction of a State statute, said (pp. 205–207):
"The decisions of that court [U. S. Supreme Court]
are always entitled to great consideration and this
court has never grudgingly yielded to them the defer-
ence which is due to so distinguished a tribunal, still,
when its decisions conflict with those of this court
upon questions over which this court has complete
and final jurisdiction, it is our plain duty, under the
law, to adhere to our own decisions. . . . In respect
to questions of general law the State courts are re-
quired to follow the decisions of the highest court
of the State and are not bound by the authority of
the Supreme Court of the United States, and particu-
larly is this true where it would be necessary to over-
rule previous State decisions in order to conform to
the views of the Federal court. (Black on Law of
Judicial Precedents, 359, and cases there cited.)"

Under defendant's theory of the case, which was
concurred in by the trial court in entering judgment
notwithstanding the verdict, a party might be de-
prived of all remedy even though he were in the exer-
cise of the highest degree of care and the defendant
were grossly negligent. The literal interpretation of
the statute for which defendant contends would in
this case render both engineers equally responsible
for the collision, since they must necessarily be held
to have violated the statute in failing to positively
ascertain that the way was clear before proceeding
over the crossing. This would lead to absurd conse-
quences. It would mean that an engineer must, under
any and all circumstances, operate his train over an
intersecting railroad without accident or mishap, re-
gardless of how reckless the engineer of another train
approaching the crossing might be, and the very fact
that a collision occurred, apart from any question of
negligence or proximate cause, would conclusively
demonstrate a violation of the statute and bar plain-

tiff's right to recover; it would render the operator of a train an insurer against all accidents, regardless of surrounding facts and circumstances, and would eliminate from the consideration of the jury all questions of fact as to whether he was free from negligence and whether the accident was due solely to the negligence of the operator of the other train involved in the collision. This is not the law, as we understand it, and the decisions hereinbefore cited and discussed, and others contained in plaintiff's brief, are all to the effect that a violation of a statute is not negligence *per se,* but a question for the jury.

Defendant argues that a custom cannot be invoked to modify or abrogate a settled rule of law or statute, and that it was error to admit evidence of a custom at variance with or contrary to the statute in question. Plaintiff had pleaded that there was a custom and practice on both railroads for the crews of trains approaching the crossing to stop at the respective signs and whistle before proceeding, and to yield the right of way to the locomotive that first whistled at the stop board. In its motion to strike defendant directed two paragraphs specifically against this part of the complaint on the ground that the custom and practice alleged was ''in absolute violation of the duty imposed upon the plaintiff by said par. 91, sec. 12, chap. 114, Cahill's 1933 Revised Statutes.'' This motion was overruled, and defendant afterward filed its answer denying the existence of any such custom, alleging that if it existed the custom was in violation of the statute referred to. When the question of proving the custom arose upon the trial, the matter was discussed in chambers and later when interrogatories were propounded to a witness, defendant's counsel objected on the ground that the custom was contrary to the statute. The court overruled the objection, but subsequently held that the custom could

not be proved unless there was a meeting of the minds, that is, an understanding between the various crews, and thereafter sustained objections to questions about custom for various other reasons, namely, that an engineer is not the person to prove the custom; that you cannot establish a custom by categorical yes or no answers; that the questions propounded allowed the witness to determine the practice and custom, without stating the physical facts; and that it was not shown that the engineer then testifying, who had had 35 years of experience, ever saw more than one C. & E. I. train come up to the crossing. When it became apparent that the court would not permit any further questioning along this line, plaintiff's counsel made an offer of proof, which the court overruled. We find from the authorities that custom and usage is a fact to be proved as any other fact (17 Corpus Juris, § 88, p. 521.) It may be the proper subject for expert testimony. The witnesses tendered by plaintiff were all men skilled in their calling and peculiarly qualified by reason of their knowledge, skill and experience to prove the custom. The principal reason assigned by the court for overruling plaintiff's offer, and for sustaining objections to the questions asked in attempting to prove the practice and custom, was that there must be a meeting of the minds or an understanding between the various crews. The law does not exact this requirement, however, for manifestly an understanding may be shown by what was done in pursuance of it.

In *North Chicago St. R. Co. v. Irwin*, 202 Ill. 345, decedent was struck by a street car using a track customarily used by cars traveling in the opposite direction. The court held that the proof of such custom was proper, and said (p. 347): ''The existence of this custom entered into the consideration of the question whether the motorman was in the exercise

of ordinary care in propelling the car northwards on the west track at such a rate of speed as twelve or fifteen miles per hour, and also bore upon the question of the carefulness or negligence of the deceased in leaving the space between the tracks and going upon the west track in order to be out of danger from a car moving northward.''

In *Chicago City Ry. Co. v. Lowitz,* 218 Ill. 24, it was held competent to prove a custom and practice of stopping street cars at a certain point, the court saying (p. 28): ''We think the rule was admissible to show a practice and custom of stopping the cars at the point of injury, and as tending, with the other evidence in the case, to show negligence in the management of the car. . . . Such a practice and custom, known and relied upon by appellant and its employes and by the public, would necessarily enter into and become a part of the *res gestae* of the injury complained of.''

In *St. Louis National Stock Yards v. Godfrey,* 198 Ill. 288, an engineer sought to recover for injuries sustained in a right angle collision between trains. The court approved evidence showing that it was customary to send a flagman out to protect the crossing, that it was not done in that case, and that the failure so to do tended to establish negligence.

In *Chicago City Ry. Co. v. Sugar,* 117 Ill. App. 578, a passenger brought action against the traction company to recover for injuries sustained in a right angle collision between two street cars at an intersection. Plaintiff offered a rule of the company relative to the right of way of cars over the crossing, and in discussing the admissibility of this evidence, the court said (pp. 581, 582):

''It seems to us clear that if a custom and practice existed regulating the handling of cars at the crossing, it would have a direct bearing upon the question

of the negligence of appellant. While it could not be regarded that a rule or custom giving appellant a superior right of way over the crossing, as claimed by it, would have the effect of absolute exoneration from liability for negligence, it is a proper element for consideration by the jury in determining whether one or both of the defendants were exercising the care for appellee's safety required of them respectively by law in the operations of the cars before and at the time of the collision. Such a practice and custom, known and relied upon by the defendants and their employees, would necessarily enter into and become a part of the *res gestae* of the collision and would form one of the circumstances surrounding the accident, just as any other fact or circumstance which existed then would be part of the transaction. . . . That was one of the questions to be passed upon by the jury, and appellant had the right to have the jury enlightened by all the facts and circumstances surrounding the accident which might in any legitimate way affect its judgment.''

In *Doering v. Peoria & Pekin Union Ry. Co.,* 196 Ill. App. 129, a rule was proved requiring cars to be stopped at a certain point, but proof was also made that it was the custom to disregard the rule and stop the cars at another point instead. The court said (pp. 134, 135):

''The question what the rule was and what the custom was at that place bears both upon the allegation that appellant was guilty of negligence in the manner in which this car was pushed across Fulton street, and also on the question whether appellant was in the exercise of due care for his own safety. . . . It has been frequently recognized by the courts of this State that the rule and custom prevailing is to be considered in determining whether an employee is negligent. [Citing cases.] These cases also show that it is a

question of fact for the jury whether in view of the existing rule and custom, the injured servant was in the exercise of due care for his own safety.'' To similar effect see *North Chicago St. R. Co. v. Kaspers,* 186 Ill. 246; *Campbell v. Chicago R. I. & P. Ry. Co.,* 243 Ill. 620; *Fowler v. Chicago Rys. Co.,* 285 Ill. 196.

We do not understand it to be plaintiff's contention that a custom or practice can prevail against a positive rule of law or statute, but he contends that proof of a custom and practice regulating the handling of trains at a crossing has a direct bearing on the question of negligence and may be introduced for that purpose, and the cases so hold. Whether the court entered judgment notwithstanding the verdict under the impression that there was no evidence to establish the custom, does not appear in the record; nevertheless, there was enough evidence in the record from which the jury might have found that defendant negligently violated the custom, and that plaintiff had observed it in proceeding across the intersection. Holding as we do that the violation of a statute does not constitute negligence *per se,* and that evidence of a practice or custom may properly be shown as bearing upon the question of negligence, we think it was error for the trial court to enter judgment notwithstanding the verdict, unless it should appear, as defendant's counsel contend, that wholly apart from the violation of the statute plaintiff was guilty of such contributory negligence as would preclude a recovery.

This leads to a consideration of the second question presented by this appeal, namely, whether there was such error in the case as would have entitled defendant to a new trial had judgment not been entered in its favor by the trial court. Sec. 68 of the Civil Practice Act (Ch. 110, ¶ 196, sec. 68, subsec. 3b, Cahill's Ill. St. 1933) provides in effect that where the reviewing court shall be of the opinion that the trial

court committed error in entering judgment notwithstanding the verdict, such court shall reverse the order unless it shall appear that there was error in the case that would have entitled a party, in whose favor the judgment notwithstanding the verdict had been entered, to a new trial if such judgment had not been entered by the trial court. In pursuance of this statute defendant urges various grounds for a retrial.

It is first contended that the court erred in refusing to permit defendant to cross-examine plaintiff and his witness, Reeves, for the purpose of impeachment, as to their testimony before the joint investigation by the two railroads involved in the accident, as to the cause of the collision in question. This investigation was attended by two representatives of the Interstate Commerce Commission. The impeaching questions sought to be propounded to the witnesses related to the distance from the intersection at which plaintiff first learned of the approaching C. & E. I. train. Upon the trial of this cause he estimated the distance at about 60 to 75 feet from the crossing, and defendant sought to show that at the hearing of the interstate commerce investigation he had testified that he saw some smoke across the oil tanks at about 115 or 120 feet from the intersection. The record clearly discloses that plaintiff's view to the south was cut off by the oil tanks and building until he reached a point approximately 90 feet from the crossing. Whether he saw smoke across the oil tanks before reaching a point where the C. & E. I. train was visible constitutes a different question, and would not afford the basis for impeachment. The interstate commerce statute (U. S. C. A., Title 45, §§ 40, 41) provides:

"40. *Investigation by commission of accidents; cooperation with State commissions; reports of investigations.* The Interstate Commerce Commission shall have authority to investigate all collisions, derail-

ments, or other accidents resulting in serious injury to person or to the property of a railroad occurring on the line of any common carrier engaged in interstate or foreign commerce by railroad. The commission, or any impartial investigator thereunto authorized by said commission, shall have authority to investigate such collisions, derailments, or other accidents aforesaid, and all the attending facts, conditions, and circumstances, and for that purpose may subpoena witnesses, administer oaths, take testimony, and require the production of books, papers, orders, memoranda, exhibits, and other evidence, and shall be provided by said carriers with all reasonable facilities: *Provided,* That when such accident is investigated by a commission of the State in which it occurred, the Interstate Commerce Commission shall, if convenient, make any investigation it may have previously determined upon, at the same time as, and in connection with, the State commission investigation. Said commission shall, when it deems it to the public interest, make reports of such investigations, stating the cause of accident, together with such recommendations as it deems proper. Such reports shall be made public in such manner as the commission deems proper. (May 6, 1910, c. 208, § 3, 36 Stat. 351.)

"41. *Reports not evidence in suits for damages.* Neither said report nor any report of said investigation nor any part thereof shall be admitted as evidence or used for any purpose in any suit or action for damages growing out of any matter mentioned in said report or investigation. (May 6, 1910, c. 208, § 4, 36 Stat. 351.)"

Plaintiff's counsel argue that under this provision the testimony taken at the interstate commerce investigation was not admissible, and cite *Louisville & N. R. Co. v. Grant,* 234 Ky. 276, wherein the purpose of the act requiring a monthly report of accidents to be

submitted to the Interstate Commerce Commission was said to be "to afford the Commission an opportunity to investigate such accidents, and no doubt the admission of the report as evidence was prohibited in order to encourage prompt and full reports of all accidents resulting in injury to persons," and that the investigation authorized was not in behalf of the railroad or its employees, but solely in the interest of the public at large with a view to promoting safety in railroad operations.

It is next urged that the verdict of the jury is against the manifest weight of the evidence. Although there are conflicts in the evidence as to whether the respective train crews stopped at their posts, and the respective speeds at which the two trains approached the crossing, there is abundant testimony from which the jury might well have found that plaintiff exercised due care and that defendant's engineer and fireman were negligent in failing to maintain a proper lookout for trains approaching from the west. It was the function of the jury, under the instructions of the court, to determine from the evidence the facts in the case and the proximate cause of the injury, and after a careful examination of the record we think that the verdict is amply sustained by the evidence.

Defendant next complains of Instruction No. 2 tendered by plaintiff and given by the court as follows: "If you believe from a preponderance of the evidence under the instructions of the court that the plaintiff has proved the allegations of his complaint, as above set forth, set out herein, then you should find the defendant guilty." This instruction is criticized because it refers the jury to the pleadings without telling it what the pleadings contain. We find, however, that defendant offered an instruction given by the court which is subject to substantially the same criticism, and the law is well settled that "a party has no right to complain of an error in an instruction,

when a like error appears in an instruction given at its own request." (*West Chicago St. R. Co. v. Buckley,* 200 Ill. 260. Also to the same effect are *Lerette v. Director General,* 306 Ill. 348, 354; *Kelly v. Chicago City Ry. Co.,* 283 Ill. 640, 649; *Smith v. Kewanee Light & Power Co.,* 196 Ill. App. 118, 126, 127.)

Instructions Nos. 3 and 4, given at plaintiff's request, are criticized because they charge the jury that plaintiff was required to exercise only ordinary care, whereas the statute in question imposed upon plaintiff the duty of positively ascertaining that the way was clear before he drove his engine over the crossing. We have already discussed this phase of the case, and in view of our conclusion it would follow that these instructions are not subject to the criticism for which defendant contends.

The remaining ground for reversal is that the verdict for $80,000 is excessive, and defendant argues that it was influenced by the conduct of plaintiff in weeping while on the stand, giving rise to prejudice and passion on the part of the jury. It is not contended that plaintiff feigned these manifestations of emotion; he broke down and wept when questioned regarding his injuries, the treatment that he had received at the hospital, and the pain and suffering that followed the accident. Our courts have held that emotional demonstrations do not necessarily call for the granting of a new trial, but that "it is for the trial judge to determine whether the witnesses were giving vent to their natural feelings or whether they were attempting to influence the jury." (*Kempinski v. Tuthill Bldg. Material Co.,* 255 Ill. App. 375, 388.) It seems quite apparent from an examination of the record that plaintiff was giving vent to his natural feelings, and that there was no attempt on his part to influence the jury.

We do feel, however, that the verdict is excessive. Plaintiff was 55 years of age when this accident oc-

curred, and had a reasonable expectancy of 15 years of service. His average earnings prior to the accident were around $3,000 a year. He had two operations following the accident. Infection set in and he must have suffered exceedingly during the long period of time he was confined to the hospital and thereafter and even upon the trial, which was 2½ years after the accident, the wounds had not entirely healed. In view of all the circumstances we think a verdict of $60,000 would more nearly represent plaintiff's damages. Therefore, the judgment of the superior court is reversed and the cause is remanded with directions that judgment be entered against defendant for $60,000 (sec. 68, Civil Practice Act), providing plaintiff shall consent to, and file, a remittitur in the sum of $20,000 in this court within 30 days; otherwise, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded with directions that judgment be entered against defendant for $60,000 providing plaintiff shall file a remittitur of $20,000 in this court within 30 days; otherwise reversed and remanded for a new trial.*

SCANLAN and SULLIVAN, JJ., concur.